2015-1878

# United States Court of Appeals for the Federal Circuit

WONDERLAND NURSERY GOODS CO., LTD.,
Plaintiff-Appellant,

v.

THORLEY INDUSTRIES LLC,
Defendant-Appellee.

Appeal from the United States District Court for the Western District of Pennsylvania, Case No. 2:12-cv-00196-NBF, Judge Nora Barry Fischer

**BRIEF OF APPELLEE THORLEY INDUSTRIES LLC**

Kent. E. Baldauf, Jr.
Daniel H. Brean
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

*Counsel for Thorley Industries LLC*

November 12, 2015

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Wonderland Nursery Goods v. Thorley Industries, 2015-1878

**CERTIFICATE OF INTEREST FOR THORLEY INDUSTRIES LLC**

Counsel for Thorley Industries LLC hereby certifies the following:

1. The full name of every party or amicus represented by me is:

Thorley Industries LLC

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Kent E. Baldauf, Jr., The Webb Law Firm
Ryan J. Miller, The Webb Law Firm
Bryan P. Clark, The Webb Law Firm
Anthony W. Brooks, The Webb Law Firm
Daniel H. Brean, The Webb Law Firm

Dated: November 12, 2015

/s/ *Daniel H. Brean*
Daniel H. Brean
*Counsel for Thorley Industries LLC*

# TABLE OF CONTENTS

**CERTIFICATE OF INTEREST FOR THORLEY INDUSTRIES LLC .......... i**

**TABLE OF CONTENTS ........................................................................ ii**

**TABLE OF AUTHORITIES ................................................................... iv**

**STATEMENT OF RELATED CASES.......................................................... vii**

**JURISDICTIONAL STATEMENT.......................................................1**

**STATEMENT OF THE ISSUES.........................................................1**

**STATEMENT OF THE CASE..............................................................1**

I. PRELIMINARY STATEMENT ...........................................................1

II. PROCEDURAL HISTORY.................................................................3

III. THE ’609 PATENT ..........................................................................6

IV. THE DISTRICT COURT’S CLAIM CONSTRUCTIONS ...........................12

A. “Crank”.........................................................................12

B. “Connected Fixedly” .......................................................13

C. “Guiding Elements”.........................................................14

D. “For Driving”...................................................................15

E. “Between”.......................................................................16

V. THE ACCUSED MAMAROO PRODUCT ...............................................17

VI. THE DISTRICT COURT’S SUMMARY JUDGMENT DECISION ..................23

A. “A First Motion Mechanism Disposed Between … For Driving”..........23

B. “Guiding Elements”.........................................................25

**SUMMARY OF THE ARGUMENT ..................................................26**

**STANDARD OF REVIEW .................................................................29**

**ARGUMENT**......................................................................................**30**

I. THE STIPULATED NONINFRINGEMENT JUDGMENT FOR CLAIM 3 SHOULD BE AFFIRMED BECAUSE THE DISTRICT COURT CORRECTLY CONSTRUED "CONNECTED FIXEDLY" AND "CRANK"..........................................33

A. "Connected Fixedly" ..........................................................................34

B. "Crank"...............................................................................................42

II. SUMMARY JUDGMENT OF NONINFRINGEMENT OF CLAIM 14 SHOULD BE AFFIRMED BECAUSE NO REASONABLE JURY COULD HAVE FOUND THE MAMAROO PRODUCT MET THE "GUIDING ELEMENTS" OR "FIRST MOTION MECHANISM" TERMS, AS PROPERLY CONSTRUED ..........................................50

A. The Accused mamaRoo Product Does Not Contain the Second "Guiding Elements," as Properly Construed...........................................................50

*1. "Guiding Elements" was Correctly Construed to Require "A Set of Tracks Which Direct Movement"*..........................................................*51*

*2. A Flat Surface Is Not a "Set of Tracks" Within the District Court's Construction*..........................................................................*55*

B. The Accused mamaRoo Product Does Not Contain a "First Motion Mechanism" "For Driving" the Base that is "Disposed Between" the Base and the Bottom Seat, as Those Terms were Properly Construed....57

*1. The Gear and Linkage are Undisputedly Part of the First Motion Mechanism "For Driving," and are Not "Between" the Base and the Bottom Seat*..............................................................................*59*

*2. The District Court Correctly Construed "Between"*............................*62*

*3. Nothing About the District Court' Summary Judgment Ruling Concerning the "First Motion Mechanism" Terms Conflicts with the USPTO's Rulings in the Reexamination*.............................................*65*

**CONCLUSION**...................................................................................**69**

**CERTIFICATE OF SERVICE** ..........................................................**70**

**CERTIFICATE OF COMPLIANCE** .................................................**71**

# TABLE OF AUTHORITIES

## *CASES*

*AK Steel Corp. v. Sollac & Ugine*,
344 F.3d 1234 (Fed. Cir. 2003) ........................................................................60

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003) ................................................................... 30, 50

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
768 F.3d 1185 (Fed. Cir. 2014) ........................................................................68

*American Piledriving Equipment, Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011) ............................................................. 38, 39, 40

*Animatics Corp. v. Quicksilver Controls, Inc.*,
102 Fed. Appx. 659 (Fed. Cir. 2004) ................................................................40

*ArcelorMittal Fr. v. AK Steel Corp.*,
786 F.3d 885 (Fed. Cir. 2015) ..........................................................................30

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ................................................................... 39, 41

*Facenda v. N.F.L. Films, Inc.*,
542 F.3d 1007 (3d Cir. 2008) ............................................................................30

*In re Swanson*,
540 F.3d 1368 (Fed. Cir. 2008) ........................................................................68

*InterDigital Comms., LLC v. ITC*,
690 F.3d 1318 (Fed. Cir. 2012) ........................................................................60

*Jurgens v. McKasy*,
927 F.2d 1552 (Fed. Cir. 1991) ........................................................................33

*Lighting Ballast Control LLC v. Philips Elecs. North Am. Corp.*,
790 F.3d 1329 (Fed. Cir. 2015) ........................................................................29

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ............................................................ 36, 46, 47

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012) ..........................................................................31

*Regents of University of Minnesota v. AGA Medical Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ............................................................................41

*SmithKline Beecham Corp. v. Apotex Corp.*,
403 F.3d 1331 (Fed. Cir. 2005) ..........................................................................33

*SRI Int'l v. Matsushita Elec. Corp.*,
775 F.2d 1107 (Fed. Cir. 1985) ..........................................................................33

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015) ........................................................................... 29, 48

*Venture Indus. Corp. v. Autoliv ASP, Inc.*,
457 F.3d 1322 (Fed. Cir. 2006) ..........................................................................29

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ..........................................................................60

*Wonderland Nursery Goods Co. v. Thorley Indus. LLC*,
601 Fed. Appx. 991 (Fed. Cir. 2015) ........................................................ vii, 5, 64

*Wonderland Nursery Goods Co. v. Thorley Indus. LLC*,
No. 2:12-cv-00196-NBF (W.D. Pa. July 30, 2015) .......................................... vii

*Wonderland Nursery Goods Co., Ltd. v. Thorley Industries LLC*,
Appeal No. 15-1034 (Fed. Cir. Dec. 8, 2014) ......................................................64

### ***STATUTES***

28 U.S.C. § 1295(a)(1) .........................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1338(a) ...............................................................................................1

28 U.S.C. § 2107(a) ....................................................................................1

35 U.S.C. § 112 .........................................................................................5

## ***RULES***

Federal Rule of Appellate Procedure 4 ..........................................................1

## ***OTHER AUTHORITIES***

Wikipedia, *Crank*, *available at*
http://en.wikipedia.org/wiki/Crank_(mechanism) ..............................................................49

Revision History - Wikepedia, *Crank*, *available at*
https://en.wikipedia.org/w/index.php?title=Crank_(mechanism)&oldid=549844838 .....49

## STATEMENT OF RELATED CASES

No other appeal in or from this same civil action was previously before this Court or any other court of appeals.

Wonderland previously appealed to this Court from a parallel *inter partes* reexamination proceeding involving the patent-in-suit. There, the PTAB found claims 1-2, 12-13, and 19-24 of U.S. Patent No. 8,047,609 invalid for obviousness and indefiniteness, and this Court summarily affirmed the PTAB's judgment. *Wonderland Nursery Goods Co. v. Thorley Indus. LLC*, 601 Fed. Appx. 991 (Fed. Cir. 2015). Wonderland did not petition for rehearing before this Court or for a writ of certiorari to the U.S. Supreme Court, so that judgment became final and unappealable.

Thorley filed a motion for attorneys' fees in the district court on July 20, 2015 arguing, *inter alia*, that Wonderland's infringement case was baseless. The district court subsequently granted Wonderland's request to extend the briefing schedule for the fee motion to resume after the present appeal concludes. *Wonderland Nursery Goods Co. v. Thorley Indus. LLC*, No. 2:12-cv-00196-NBF, ECF No. 277 (W.D. Pa. July 30, 2015).

Thorley and its undersigned counsel are unaware of any other actions now pending in this or any other court that may directly affect or be directly affected by this Court's decision in the present appeal.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Wonderland filed a timely notice of appeal under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4. Thus, this Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1. Whether the district court correctly construed the terms "crank," "connected fixedly," "guiding elements," and "between" of the patent-in-suit.

2. Whether the district court correctly entered summary judgment of non-infringement of claim 14.

## STATEMENT OF THE CASE

### I. PRELIMINARY STATEMENT

In scattershot style, Wonderland contends that the district court erred in every material claim construction and factual finding touching upon the two remaining claims asserted in this case (i.e., claims 3 and 14, the only two claims not invalidated in the co-pending reexamination proceeding). But this is not a case where the district court ignored the law or the facts and made the more than half a dozen critical mistakes alleged by Wonderland. The district court's claim constructions were thoughtful and well-reasoned, and its summary judgment findings gave Wonderland every benefit of the doubt before finding that no

genuine disputes of fact existed. The problem is that Wonderland has a dearth of evidence—both intrinsic and extrinsic—to support its constructions, and Wonderland admitted essentially every material fact that confirms no infringement can exist under the correct constructions.

Wonderland's claim constructions reflect a transparent effort to read claims 3 and 14 onto the accused product, and nothing more. Wonderland steers clear of every fact inside or outside the patent that confirms the claims to be narrower than Wonderland would like them to be. The district court was careful not to unduly restrict its constructions by limiting them to the embodiment(s) disclosed in the patent, but at the same time would not adopt Wonderland's overbroad definitions that were untethered to the context of the patent.

Wonderland continues to take such absurd positions as to contend, for example, that a single flat surface having no three-dimensional structure can be considered a "set of tracks which direct movement" of wheels that roll across the surface. This meritless argument alone precludes any infringement of claim 14. Wonderland also contends that two separate pieces of a motor claimed as "connected fixedly" to each other can include a single, integrally-formed piece. That meritless argument alone dooms Wonderland's appeal as to claim 3.

There are plenty of additional examples where Wonderland's positions stretch the bounds of reason, ignore the applicable facts and law, and come

nowhere close to justifying a reversal of the district court's judgment. The judgment should be affirmed in all respects.

## II. PROCEDURAL HISTORY

On January 12, 2012, Thorley Industries LLC ("Thorley") filed a petition for *inter partes* reexamination at the USPTO challenging the validity of claims 1-3, 12, 13, 19, and 20 of U.S. Patent No. 8,047,609 ("the '609 Patent"), which is owned by Wonderland Nursery Goods Co. ("Wonderland"). A0707. The USPTO promptly instituted the reexamination proceeding as to all challenged claims except claim 3. A2413-17.

Wonderland then filed this lawsuit against Thorley on February 16, 2012. A0109. Wonderland accused Thorley's "mamaRoo" infant rocking chair product of infringing the '609 Patent. A1331. Specifically, Wonderland asserted that the mamaRoo product infringed claims 1-3, 12-14, and 19-20 of the '609 Patent. A0032.

Thorley moved to stay the district court litigation in light of the reexamination proceeding, but the district court declined to stay the case. A0002. The reexamination and litigation thus proceeded in parallel.

The district court issued its claim construction order on January 11, 2013. A0001-31. Among other claim terms, the district court construed the terms

"crank" and "connected fixedly" (as used in claim 1), as well as "guiding elements" (as used in claims 2, 3, 13, 14, and 20). A0020-28.

Based on the constructions of the terms "crank" and "connected fixedly," Wonderland stipulated to a judgment of noninfringement of claims 1-3. A0032-33 (stipulating that "the foregoing claim constructions preclude [Wonderland] from obtaining a judgment in its favor with respect to asserted claims 1-3"). Thorley noted in the stipulation that it had "additional bases for non-infringement of these claims." A0033. Wonderland reserved its rights to appeal the "crank" and "connected fixedly" claim constructions, and the litigation continued with respect to the remaining claims 12-14 and 19-20. A0033.

Following further fact and expert discovery, the parties filed cross motions for summary judgment on the issue of infringement for the remaining claims. A0062. Before resolving the motions, the district court further construed the terms "for driving" and "between," appearing in claims 12-14 as part of the phrase "a first motion mechanism disposed between said base and said bottom seat for driving said base to move back and forth on said bottom seat." A0038-39, A0064, A0069, A0071, A0106. Thorley's motion was granted as to claims 12-14 based on the district court's finding that there was no genuine dispute that Thorley's mamaRoo products fail to meet the "first motion mechanism disposed between … for driving" requirement. A0038-39, A0074. The district court further granted

Thorley's motion as to claim 14, holding that the mamaRoo product likewise failed to meet the "guiding elements" requirement of that claim. A0080.

Because the district court denied Thorley's summary judgment motion as to claims 19-20 (A0078), the case proceeded toward trial. Meanwhile, all the claims being considered in the reexamination proceeding were finally rejected by the Examiner on prior art and Section 112 grounds. Thus, as trial neared, the district court decided to stay the litigation until the reexamination reached a final decision on appeal. A0128-31 (Docket Nos. 210, 219, 229).

Subsequently, the PTAB upheld the final rejection of claims 1, 2, 12, 13, 19, and 20, this Court summarily affirmed the PTAB's judgment, and those claims were all cancelled. *Wonderland Nursery Goods*, 601 Fed. Appx. 991; A2409-10. The cancellation mooted the litigation as to all claims except claims 3 and 14. A2409-10. Accordingly, the parties jointly moved the district court to lift the stay and enter final judgment as to claim 3 (which Wonderland had previously stipulated was not infringed) and claim 14 (for which the district court had previously entered summary judgment of noninfringement). A2409-10.

Final judgment was entered accordingly (A0084-85), and Wonderland appealed.

## III. THE ’609 PATENT

The ’609 Patent, entitled “Infant Rocking Chair and Driving Device for Driving the Same,” was filed on December 3, 2010. The stated purpose of the ’609 Patent is “to provide a driving device for driving a seat body of an infant rocking chair to reciprocate back and forth as well as up and down in such a manner that only little noise is generated, thereby resulting in infant comfort.” ’609 Patent, at 1:34-38. As shown in Figs. 1 and 2 below, the chair generally includes a seat body (11) above a base (2), which sits on top of a bottom seat (12):




FIG. 1




FIG. 2

The base (2) and seat body (11) are movable according to two motion mechanisms—the "first motion mechanism" (4) for purely horizontal movement via a first movable member (42), and the "second motion mechanism" (5) for horizontal and vertical movement via a second movable member (52).

As shown in Fig. 1 above, "[t]he first motion mechanism 4 includes a horizontal first guide path unit 41 and a first movable member 42 movable along the first guide path unit 41." '609 Patent, at 4:21-23. The first guide path unit (41) comprises two "spaced-apart straight guiding rods" (411) upon which corresponding rollers (421) on the moveable member (42) of the base (2) can roll to make the base move horizontally back and forth along the rods. *Id.* at 4:24-25.

As also shown in Fig. 1, the "second motion mechanism 5 includes a vertically varying second guide path unit 51 and a second movable member 52 movable along the second guide path unit 51." '609 Patent, at 4:33-35. The second guide path unit (51) comprises "a pair of vertically curved guiding rods" (511) upon which a second set of rollers (522) of the support frame (521) on the second movable member (52) can roll. *Id.* at 4:37-45. Because of the vertical variance in the second guiding rods (511), the support frame (521), supporting rod (3), and seat body (11) will dip downward when the second movable member (52) rolls into the middle of the guiding rods (511), and then up again as it approaches the other side. *Id.* at 4:45-48. Meanwhile the base (2) remains in only horizontal motion along the first guiding rods (411). *Id.* Thus, the infant seat body is rocked back and forth and up and down.

The ’609 Patent explains that the driving device that moves the first and second movable members (42, 52) utilizes a crank (61) that is linked between a motor shaft (60) and the base (2):




’609 Patent, at Fig. 1; *id.* at 4:50-65 (“The driving device 1 further includes a crank 61 connected fixedly to the motor shaft 60 at one end thereof, and a link 62 having two ends connected respectively and pivotally to the base 2 and the other end of the crank 61. As such, rotation of the motor shaft 60 results in reciprocal movement of the first and second movable members 42, 52 [on the base 2].”).

The crank (61) is disclosed as being “connected fixedly to the motor shaft 60.” ’609 Patent, at 4:52-53. The patent universally refers to two distinct, but linked, elements as being “connected” or “connected fixedly.” *See, e.g.*, ’609 Patent, at 3:28-29 (describing an upright supporting rod 3 having a top end connected to the seat body 11”), 3:36-38 (describing “a tubular rod-mounting

member 23 inserted into and connected fixedly to the connecting member 22"), 3:40-41 ("The sleeve tube 31 is inserted into and connected fixedly to the rod-mounting member 23."), 4:43-45 ("The second rollers 522 are sleeved rotatably on an axle 523 connected fixedly to the supporting frame 521."). By contrast, the '609 Patent refers to portions of non-district components—the legs (26) of the plate (21) on the base (2) shown in Fig. 1—as being "integrally" formed. '609 Patent, at Fig. 1, 4:30-32 ("The axles 422 are connected respectively to four supporting legs 26 extending respectively and integrally from four corners of the plate 21.").

Claim 1 recites the invention as including the first motion mechanism and guide path unit, and separately recites the motor and crank for driving the back-and-forth horizontal motion:

> 1. A driving device for an infant rocking chair, the infant rocking chair including a seat body and a bottom seat, said driving device comprising:
>
> a base adapted to be disposed between the seat body and the bottom seat;
>
> a supporting element connected to said base and adapted to support the seat body;
>
> a first motion mechanism including a horizontal first guide path unit adapted to be disposed at the bottom seat, and a first movable member disposed on said base and movable along said first guide path unit; and
>
> a motor for driving said first movable member, wherein said motor includes:
>
> a motor shaft,
>
> *a crank connected fixedly to said motor shaft* at one end thereof, and

> a link having two ends connected respectively and pivotally to said base and the other end of said crank such that rotation of said motor shaft results in reciprocal movement of said first movable member.

’609 Patent, at 6:48-67 (emphasis added). Claim 3, which depends from claims 1 and 2, recites further features of the first and second motion mechanisms that are not at issue in this appeal. ’609 Patent, at 7:1-11.

Independent claim 12 is similar to claim 1, but includes the second motion mechanism and omits any separate reference to a motor or crank, instead specifying that the “first motion mechanism” is responsible “for driving” the back-and-forth motion:

> 12. An infant rocking chair comprising:
> a seat body;
> a bottom seat;
> a base disposed between said seat body and said bottom seat and movable on said bottom seat;
> a supporting element connected to said base for supporting said seat body;
> *a first motion mechanism disposed between said base and said bottom seat for driving said base to move back and forth on said bottom seat*; and
> a second motion mechanism disposed between said supporting element and said bottom seat for driving said supporting element to move up and down relative to said base.

’609 Patent, at 7:59-8:11 (emphasis added). Claim 14, which depends from claims 12 and 13, adds the following limitations further specifying the structures of the first and second motion mechanisms:

- wherein said first motion mechanism includes a first pair of guiding elements spaced apart from each other, and two parallel rows of rollers that are disposed respectively on two opposite sides of said base and that are movable respectively along said first pair of guiding elements

- wherein *said second motion mechanism includes a second pair of guiding elements* spaced apart from each other, a supporting frame attached fixedly to the bottom end of said supporting element, and a pair of rollers that are disposed rotatably on said supporting frame and that are movable respectively along said second pair of guiding elements.

’609 Patent, at 8:12-24 (emphasis added).

## IV. The District Court’s Claim Constructions

### A. “Crank”

The district court construed the term “crank,” as used in claim 1, to mean “an arm attached at a right angle to a shaft which turns about the axis of the shaft.” A0023. This definition was, as the district court observed, entirely consistent with the ’609 Patent’s disclosure, which shows a crank (61) that consists of an arm attached to the motor shaft (60) at a right angle. *See, e.g.,* Figs. 1, 12.

In arguing for a considerably broader construction (“‘a device converting rotary motion into reciprocating motion’”), Wonderland relied almost entirely on extrinsic evidence. A0021-22. The district court, although relying primarily on the intrinsic disclosures in the ’609 Patent (A0022 n.12), expressly found Wonderland’s extrinsic sources to be “unconvincing.” A0022. First, the Hierapolis Sawmill—which included a crank in the third century AD—was a very

"dated" source. *Id*. In any event, the Wikipedia image representing the ancient crank that Wonderland submitted "appear[ed] to contain a right angled arm," and another extrinsic definition specifically defined a crank as "an arm attached at right angles to a rotating shaft." *Id.*

Wonderland's alternative "compromise" construction of "'[a] link in a mechanical linkage or mechanism that can turn about a center of rotation'" fared no better. As the district court noted, the term "link" is used elsewhere in the patent to describe other components, and is even claimed separately from the crank. A0022-23; '609 Patent, at 4:51-55; '609 Patent, at Claim 1. Because Wonderland's other extrinsic sources clearly defined the crank as an "arm," or otherwise defined "link" instead of "crank," the district court rejected Wonderland's alternative construction as well. A0022-23.

**B. "Connected Fixedly"**

The district court construed the term "connected fixedly," as used in claim 1, to mean "separate pieces joined or linked securely to one another." A0028. Wonderland had contended that the term could encompass a single unitary item or integrally-formed component, arguing for a construction of "joined or linked securely." A0026.

The district court observed that the specification uniformly referred to multiple distinct "connected" components as being different from integrally

formed components. A0027-28. Finding that Wonderland could identify no intrinsic evidence for its broad construction, whereas both intrinsic evidence and extrinsic dictionary definitions supported Thorley's construction, the district court concluded that "connected fixedly" "impl[ies] to any person, whether of ordinary skill in the art or not, that there is a connection of separate pieces." A0027.

### C. "Guiding Elements"

The district court construed "guiding elements," as used in claims 2, 3, 13, 14, and 20, to mean "a set of tracks which direct movement." A0026. Wonderland had contended that the term should more broadly encompass "a set of pathways which control or direct movement." A0023.

The district court observed that the specification discloses the "guiding elements" to be a set of "parallel guiding rods," but decided that such a construction would unduly limit the claims to the preferred embodiment. A0023-A0025. The district court found that because the '609 Patent "uses the terms 'guide path unit' to express the idea of a guided path …, the term 'guiding elements' refers to the actual pieces that make up that 'unit.'" A0025. Thus, the district court held that "construing the term 'guiding elements' as a set of 'tracks' is appropriate to define the physical components of the 'guide path unit,' but allows for a broader definition beyond the embodied parallel rods." *Id*.

### D. "For Driving"

The district court construed the term "for driving," as used in claim 12 in the phrase "a first motion mechanism disposed between said base and said bottom seat *for driving* said base to move back and forth on said bottom seat," to mean "controlling or directing motion." A0069. Wonderland argued that "for driving" must be interpreted not to include a power mechanism or the claimed motor. A0068.

The district court observed that the term "for driving" was used somewhat inconsistently throughout the specification:

> (1) the entire invention of the '609 Patent is held out to be a "driving device" for infant rocking chairs;
> (2) Claim 1 recites "a motor for driving said first movable member";
> (3) Claims 12-14 recite "a first motion mechanism … for driving said base to move back and forth on said bottom seat"; and
> (4) Claims 12-14 and 19-20 recite "a second motion mechanism … for driving said supporting element to move up and down relative to said base."

A0068-69. Citing these examples, the district court explained that "[t]he first example suggests that 'driving' refers to the concept of 'powering or creating motion,' the second example suggests that 'driving' may not automatically include a 'motor,' and the third and fourth examples suggest that 'driving' refers to 'controlling or directing motion.'" A0069. The district court further recognized that "for driving" connotes more than merely contributing to or facilitating driving, but cannot include "'each and every component that contributes to driving' because

the drafters separately recited a 'motor for driving' in Claim 1, and this motor includes both a 'crank' and a 'link.'" *Id*.

For these reasons, the district court ultimately adopted "an intermediate construction, 'controlling or directing motion,' that does not require all of the components that contribute to driving, but still requires a minimum level of control or direction of the motion." *Id*.

**E. "Between"**

The district court construed the term "between," as used in claim 12 in the phrase "a first motion mechanism disposed *between* said base and said bottom seat," to mean "in the space that separates." A0071.

Although Wonderland advanced a construction of "in intermediate relation to," the district court found that the '609 Patent "used precise language to specify the location of the first motion mechanism of Claim 12." A0070. The location of the first motion mechanism could have been defined at any number of locations, and indeed was defined more approximately as "disposed at the bottom seat" in claim 19, indicating that "the claim drafters were aware of their use of the term 'between.'" *Id*. Even if the '609 Patent's preferred embodiment mapped more directly to claim 19 (because, arguably, the entirety of the first motion mechanism is not directly below the base at all times), claim 12 was nonetheless drafted "with

precision to specify the location of an object 'in the space that separates.'" A0070-71.

## V. THE ACCUSED MAMAROO PRODUCT

The mamaRoo product is an infant seat that generally moves an infant in a back-and-forth and up-and-down motion:



*See* A1361-62. Wonderland accused the bottom platform of the mamaRoo as meeting the "bottom seat" element of the claims:




A1362-63.[1] On top of the accused bottom seat is a moveable supporting element that Wonderland accused as the claimed "base":

[1] All annotations supplied by Wonderland unless otherwise noted.




A1363-64. The base has wheels that engage with rails on the bottom seat that allow the base (along with the connected infant seat) to roll back and forth along the bottom seat:



A1365-66. Wonderland accused this wheel-and-rail arrangement as corresponding to the "first motion mechanism" in the patent, with the rails allegedly meeting the "first pair of guiding elements" claim requirements. A1365-68.

The back-and-forth motion is accomplished via the gear and linkage connected to the base:




A1661 (annotations by Thorley). Rotation of the gear by a motor causes the linkage to cyclically drive the base backward and forward. A2281-82; A1806. The gear and linkage elements are not "disposed between" the base and the bottom seat. A1806-08.

The mamaRoo also contains a double scissor mechanism attached to the top of the base that, along with a second motor and a crank arrangement, allows the

infant seat to be raised and lowered while the double scissor mechanism expands and contracts:




A1366; *see also* A0075, A1781-84. The double scissor mechanism was accused by Wonderland as corresponding to the claimed "second motion mechanism" in Wonderland's patent. *Id.* Because the scissor mechanism and its associated motor sit atop the moveable base and travel horizontally with the base, both back-and-forth movement and up-and-down movement of the infant seat can be achieved simultaneously.

The bottom of the scissor mechanism has wheels that roll back and forth along the top surface of the base as the scissor mechanism expands and contracts:




A1785. Wonderland accused the portions of the flat surface on the base on which the wheels rolled as meeting the "second pair of guiding elements" requirement of the claims:




A1370. It is undisputed, however, that these portions of the flat base surface, or the identification lines appearing on either side, do not guide, direct, or otherwise affect the horizontal movement of the wheels across the surface in any way. A1785; A2287 (Wonderland admitting that "[t]he indication lines … do not serve

any functional purpose with respect to guiding or directing movement of the wheel"). Instead, they are artifacts of the manufacturing and inspection process that are used to indicate where on the top surface of the base the wheels are likely to make contact. A1785-86.

## VI. THE DISTRICT COURT'S SUMMARY JUDGMENT DECISION

The district court granted Thorley's motion for summary judgment of noninfringement on two distinct grounds: (1) that Thorley's mamaRoo product failed to meet the term "a first motion mechanism disposed between said base and said bottom seat for driving said base to move back and forth on said bottom seat," appearing in claim 12; and (2) that Thorley's mamaRoo product failed to include a "second pair of guiding elements," as required by claim 14. A0071-74, A0078-80.

### A. "A First Motion Mechanism Disposed Between … For Driving"

The district court first decided that the "first motion mechanism" as recited in claim 12 includes the gear and linkage of the mamaRoo product. A0073. The parties had agreed that a "motion mechanism" was a "combination of machine parts," and the district court's construction of "for driving" was "controlling or directing motion." A0071. Even if, as Wonderland contended, the "first motion mechanism" need not include a motor or actuator, Wonderland had admitted that, in this instance, "the gearing and linkage identified … are for driving the base to move back and forth on the bottom seat." A0073 (citing A2281-82). This

admission, the district court held, "read directly onto the claim language for Claim 12 in the same way as the first motion mechanism." *Id*. Put another way, there was no material dispute that "[e]ven when the motor is removed or turned off, the gear and linkage still 'control or direct' the first motion mechanism because the range of the back and forth motion is confined within a preset path based on the diameter of the gear and length of the linkage." *Id*. Thus, the district court held that "no reasonable jury could conclude that the gearing and linkage are not part of the first motion mechanism." *Id.*

From this premise, the district court further found that "the aforementioned gearing and linkage are not 'disposed between said base and said bottom seat,'" as required by claim 12. A0073. Wonderland's expert had admitted that the gear and linkage forming part of the first motion mechanism are *not* disposed between the base and the bottom seat. A0074 (citing A1806-08) ("Q. And why did you not identify [the circular gear] as part of the first motion mechanism? A. First of all, it is not disposed between the base. It's not disposed between those two elements so it's not part of it, it's not part of the claim."); *id.* ("Q. And is the same true of [the connecting rod]? A. Yes.").

In sum, the district court found that "the mamaRoo does not contain a first motion mechanism because the first motion mechanism includes the gear and

linkage, and the gear and linkage are not disposed between the base and bottom seat." A0074. Accordingly none of claims 12-14 could be infringed.

**B. "Guiding Elements"**

The "second pair of guiding elements" in claim 14 refers to the guiding elements that allow for vertical movement by the infant seat body. *See* '609 Patent, Claims 12 and 14 (describing "second motion mechanism," including "second pair of guiding elements," "to move [the infant seat body] up and down"). The accused "second pair of guiding elements" in the mamaRoo product was alleged by Wonderland to be the flat top surface of the base, upon which the wheels at the bottom of the scissor mechanism rode. A0078; A1663.

The district court, turning first to the "which direct movement" portion of its construction for guiding elements, held that whether the flat surface "plays any role, albeit minimal, in the vertical—or lack of vertical—movement of the wheels is a factual issue for the jury." A0079.

As to the "set of tracks" portion of the construction, however, the district court identified no material factual disputes. Wonderland was unable to identify any structure on the flat top surface of the base that performed any directional guidance of the wheels, and had admitted that the "indication lines" on the surface "do not serve any functional purpose with respect to guiding or directing movement of the wheel," and were not alleged to constitute the "second set of

guiding elements." A0079-80 (citing A2286-87). Thus, the district court concluded that "there are no other tracks—visible or otherwise—contained on the top surface of the base platform that could serve as guiding elements." A0080 ("[T]he Court agrees with Thorley that a finding that the top surface of the base platform meets the 'guiding elements' limitation would read that limitation out of the claim language."). Summary judgment of noninfringement of claim 14 was therefore granted. *Id.*

## SUMMARY OF THE ARGUMENT

All of the district court's claim constructions that Wonderland challenges on appeal are well supported by the intrinsic and extrinsic records. Every single construction is consistent with the '609 Patent's claim language and specification, and none unduly limit the scope to any preferred embodiment(s). The constructions are also reinforced by the extrinsic evidence in the record which, as the district court found, either confirms the propriety of the district court's construction or otherwise shows that Wonderland's positions are untenable.

Wonderland would have this Court construe two separately claimed components, claimed as "connected fixedly" to each other, as encompassing a one-piece, integrally-molded object, even though the specification distinguishes between integrally-formed and connected objects. Wonderland would have this Court construe the term "crank" to include almost any rotating object ("a link in a

mechanical linkage or mechanism that can turn about a center of rotation"), even though the patentee chose to claim the specific and well-known structure of a "crank," which has an arm attached at one end to a rotating shaft. Wonderland would also have this Court construe the term "guiding elements" that are "spaced from each other" to include portions of a single flat unadorned surface, even though the patent makes clear that the guiding elements must have a physical structure such as a track that controls or directs horizontal movement. And Wonderland would have this court construe the word "between" to nebulously include any intermediate relationship between objects, even though every usage of the word "between" in the patent refers to the space that separates two objects, not merely some vague physical and/or logical proximity.

None of these meritless positions are supported by the intrinsic or extrinsic records because Wonderland is not sincerely trying to engage in a proper claim construction analysis. Rather, Wonderland is improperly trying to read the claims onto the accused mamaRoo product by any means conceivable. In the process, Wonderland plays fast and loose with the record, avoids addressing the facts that refute its arguments, and makes many arguments that lack both legal and factual support.

In short, Wonderland presents no legitimate reason to discard any of the district court's constructions, let alone adopt Wonderland's overbroad

constructions that are completely untethered to the ’609 Patent. Because Wonderland abandoned any non-literal theories of infringement that it may have had as to these claim terms, this Court would have to jettison well-settled claim construction principles and stretch Wonderland’s claims beyond the realm of reason before Wonderland could possibly articulate any plausible theory of infringement.

From a procedural standpoint, the fact that the “connected fixedly” and “crank” constructions were correct suffices to affirm the stipulated noninfringement judgment for claim 3. Indeed, because both terms appear in claim 3, a finding that the claim construction was correct for either term independently supports the judgment and requires affirmance.

It is equally necessary to affirm summary judgment for claim 14 because Wonderland admitted every material fact for which it now contends there exists a genuine dispute. Wonderland accused the flat top surface of the base in the mamaRoo product as meeting the second “guiding elements” claim requirement, but admitted that this surface has no spaced apart physical structures that control or direct the horizontal movement of the wheels, and thus cannot meet the district court’s correct “set of tracks” construction or any other reasonable construction of “guiding elements.” Wonderland also admitted that the gear and linkage in the mamaRoo product are “for driving” the base (because they “control[] or direct[]

motion" under the district court's correct construction), and that those components are not "between" the base and the bottom seat. This avoids another independent and distinct claim requirement of claim 14.

Wonderland cannot establish any error by the district court in this appeal, let alone all four of the alleged claim construction errors, plus two alleged summary judgment errors, that it must establish to be entitled to relief. The judgment of the district court was carefully considered and well reasoned, and should be affirmed in all respects.

## STANDARD OF REVIEW

Issues of claim construction based on intrinsic evidence are reviewed *de novo*. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840-41 (2015). To the extent a district court makes factual findings regarding extrinsic evidence as part of its claim construction analysis, those evidentiary underpinnings are entitled to deference and are reviewed for clear error. *Id.*; *see also Lighting Ballast Control LLC v. Philips Elecs. North Am. Corp.*, 790 F.3d 1329 (Fed. Cir. 2015). Clear error only exists if this Court is "left with a definite and firm conviction that a mistake has been committed" by the district court. *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1331 (Fed. Cir. 2006).

This court reviews the grant or denial of summary judgment according to the law of the regional circuit in which this appeal would otherwise lie—in this case,

the Third Circuit. *ArcelorMittal Fr. v. AK Steel Corp.*, 786 F.3d 885, 888 (Fed. Cir. 2015). The Third Circuit reviews such summary judgment decisions *de novo*. *Id.* (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1013 (3d Cir. 2008)).

To the extent that "noninfringement is conceded by stipulation, [this Court] need only address the district court's construction of the claims." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1368 (Fed. Cir. 2003).

## ARGUMENT

Only two claims of the '609 Patent are at issue in this appeal—claims 3 and 14. The appeal centers around the following four claim terms: (1) "crank"; (2) "connected fixedly"; (3) "first motion mechanism [a] *disposed between* said base and said bottom seat [b] *for driving* said base"; and (4) "second motion mechanism includ[ing] a second pair of *guiding elements*." The former two terms appear in claim 3 and the latter two terms appear in claim 14.

For the former two terms, where Wonderland conceded noninfringement of claim 3 by stipulation, this Court need only consider whether the claim constructions were correct and need not consider the substantive issue of infringement. *Altiris*, 318 F.3d at 1368. Because each of the "crank" and "connected fixedly" terms separately justified the stipulation of non-infringement, Wonderland would need to be correct on the constructions for both terms to obtain any relief as to claim 3 from this Court. *Presidio Components, Inc. v. Am. Tech.*

*Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012) ("To prove literal infringement, a plaintiff must show that the accused device contains each and every limitation of the asserted claims."). Likewise for the latter two terms, both of which independently justified the district court's entry of summary judgment concerning claim 14, Wonderland again would need to be correct on both issues to avoid the noninfringement judgment. *Id.* As demonstrated below, because Wonderland is wrong on all points (even though one term per claim would suffice), the judgment must be affirmed.

Importantly, Wonderland does not assert any theories of infringement under the doctrine of equivalents. Wonderland's infringement contentions had initially articulated an equivalents theory for two claim terms: "motor shaft" and "crank." A1706-12. But following the district court's *Markman* order, Wonderland abandoned *all* infringement theories concerning the terms "crank" or "connected fixedly," saying that the constructions outright "preclude [Wonderland] from obtaining a judgment in its favor" on claim 3. A0032-33. After the *Markman* ruling, Wonderland never developed or articulated any non-literal theory of infringement for any other claim terms. *See generally* A1745-60 (Wonderland expert report, silent on any theory of equivalents); A1331 (Wonderland's summary judgment motion arguing that "it is clear that Thorley's mamaRoo device … literally infringes several claims"); A2095 (Wonderland's opposition to Thorley's

summary judgment motion arguing only that "[t]here is no genuine dispute of *fact* with respect to whether the Accused Product *literally* meets each and every limitation of claims 12-14 and 19-20 of the '609 patent") (emphasis added).

Because Wonderland limited its case to literal infringement, anything other than a dramatic departure from the constructions given by the district court—essentially, disregarding the '609 Patent's specification, reading the claims directly onto the mamaRoo product, and doing so for all four claim terms at issue—cannot justify vacating the noninfringement judgment. Reversal would require, for example: (1) the term "connected fixedly" to include portions of one-piece integrally-formed objects that were never separated and thus cannot possibly have been "connected"; (2) the term "between" to include any objects that are merely near or adjacent to each other; and (3) the "guiding elements" construction of "tracks which direct movement" to include a flat surface that has no physical structures (let alone a "pair" of "spaced apart" structures) to serve any guiding purpose. Such constructions have no merit, and neither does Wonderland's appeal.

All of Wonderland's arguments reflect a transparent effort not to construe the claims as appropriate in light of the relevant intrinsic and extrinsic evidence, but merely to read the claims onto the accused mamaRoo device in any way possible. It is well settled that such infringement-minded claim construction is improper. *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331,

1340 (Fed. Cir. 2005) ("[T]his court has repeatedly stated that a court must construe claims without considering the implications of covering a particular product or process."); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991) ("[A] claim is construed without regard to the accused product."); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement.") (emphasis in original).

Following the correct claim construction standards, and considering the proper evidence instead of how the mamaRoo product works, all of the district court's constructions were correct and should be affirmed. This alone disposes of Wonderland's appeal concerning claim 3, and in light of unrebutted evidence and key admissions by Wonderland, no reasonable jury could have concluded that the properly construed claim terms appearing in claim 14 were satisfied by the accused mamaRoo product. Summary judgment of noninfringement for claim 14 was correctly entered by the district court.

## I. THE STIPULATED NONINFRINGEMENT JUDGMENT FOR CLAIM 3 SHOULD BE AFFIRMED BECAUSE THE DISTRICT COURT CORRECTLY CONSTRUED "CONNECTED FIXEDLY" AND "CRANK"

As noted above, should this Court find that the district court correctly construed either "connected fixedly" or "crank," the stipulated judgment of

noninfringement of claim 3 must be affirmed. Thorley addresses both terms only in the interest of providing a complete response to Wonderland's opening brief.

### A. "Connected Fixedly"

Wonderland contends that the term "connected fixedly" should be construed to mean "joined or linked together," and should not require "separate pieces" that are so joined. Wonderland Br. at 43; A0027. The reason that Wonderland seeks to avoid the "separate pieces" aspect of the construction is that what Wonderland accused as the "crank" and "motor shaft" in the mamaRoo product were merely two portions of one and the same integrally-formed gear:




A1706-12, A1716-17 (Wonderland contending that "[t]he center portion of gear 87 comprises the motor shaft" and that "[t]he part of the gear 87 from the center

portion to the point of connection to the link 89 comprises the crank"); *see also* A1206-07.

Wonderland's infringement-focused construction finds no support in the specification, however, which uses "connected" or a variant thereof a number of times. Without exception, the word "connected" is used to describe separate parts which are "connected" together. For example:

> • "an upright supporting rod 3 having a top end connected to the seat body 11" ('609 Patent, at 3:28-29). The supporting rod and seat body are shown as separate elements in, e.g., Fig. 1.
>
> • "a tubular rod-mounting member 23 inserted into and connected fixedly to the connecting member 22" ('609 Patent, at 3:36-38). The rod-mounting member is shown as a separate element from the connecting member in Figs. 1 and 2.
>
> • a "sleeve tube 31 … inserted into and connected fixedly to the rod-mounting member 23" ('609 Patent, at 3:40-41). The sleeve tube and rod-mounting member are shown as separate elements in Figs. 1 and 2.
>
> • "an axle 523 connected fixedly to the supporting frame 521" ('609 Patent, at 4:44-45). The axle and supporting frame are shown as separate elements in Fig. 1.

Not once does the '609 Patent use the term "connected" to describe portions of the same integral or unitary piece. In fact, the sole use of "integrally" in the '609 Patent is with respect to the legs (26) of the base (2) which are described as "extending .... from" the base plate (21). '609 Patent, at 4:30-32. Fig. 1 shows the legs (26) and plate (21) as a unitary structure. That the inventors used the word

"integrally" solely in this arrangement, while the word "connected" was used elsewhere, including in claim 1, indicates that "integrally formed" is a distinct concept from "connected" within the meaning of the '609 Patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'").

Notably, elsewhere the '609 Patent characterizes and claims elements as "attached fixedly" to each other. '609 Patent, at Claims 6, 14. The parties had agreed that the terms "connected fixedly" and "attached fixedly" "have the same meaning," and both parties proposed the same competing constructions for both terms. A0026. As with components described as "connected" in the '609 Patent, everything described as being "attached" involves two distinct pieces that may be connected together. '609 Patent, at 4:40-42 ("The second movable member 52 includes a supporting frame 521 attached fixedly to a bottom end of the supporting rod 3."), Fig. 1 (showing the supporting frame (521) as separate piece from the supporting rod (3)); *id.* at 6:27-29 ("The spring-retaining member 543 is attached to the bottom seat 12."); Fig. 11 (showing the spring-retaining member (543) as a separate piece from the bottom seat (12)).

As commonly understood, the word "connected" means "joined or linked together," and the act of "connecting" amounts "to join[ing] or fasten[ing] together

usually by something intervening." A1292; A0417-18, A0420, A0545-46, A0548 (dictionary definitions). The district court's construction (i.e., that the motor shaft and crank are separate parts) aligns most naturally with this ordinary and customary meaning. It is a matter of common sense "to any person, whether of ordinary skill or not" that, to form a "connection," one must "join or fasten together" parts which, absent the connection, would otherwise be separate or apart. A0027. Indeed, as Thorley explained during the *Markman* hearing, the concept of two components being "connected" is elementary:

> [T]his takes us, I think, all the way back to nursery school, if we all remember the little rhyme: The shin bone is connected to the knee bone, the knee bone is connected to the thigh bone—I seem to forget the part where it was the lower thigh bone is connected to the upper part of my thigh bone. Why? Because it's the same thing, they're not connected.

A1230-31.

The plain meaning of claim 1 is that the crank and motor shaft are separate parts that are "connected fixedly" to each other, and are not integral portions of the same unitary part. This is the most natural reading of "connected fixedly" in claim 1, and especially in light of how the specification uses the term. Two parts need to be separate and disconnected before they can possibly be considered "connected" to each other. Indeed, even if this Court were to adopt Wonderland's construction of "joined or linked securely," the words "joined" and "linked" themselves connote the same physical distinctness and separateness, and could not possibly affect the

noninfringement judgment where Wonderland accused two portions of a single, integrally-formed gear as being "connected."

Wonderland's reliance on *American Piledriving Equipment, Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1335 (Fed. Cir. 2011) for the proposition that this Court has, in the abstract, "recogni[zed] [] at least two species of 'connections'" (i.e., "mechanical" and "integral" connections) is misplaced. Wonderland Br. at 29, 43. That case made no such general pronouncements of any plain and ordinary meaning of the term "connected." First, the construction for "connected" in that case was not even disputed by either party on appeal. *American Piledriving*, 637 F.3d at 1335. The issue was whether the term "integral" appearing in a dependent claim was narrower than "connected" when referring to the relationship between the same two pieces. *Id.* This Court found the term "integral" to be presumptively narrower because of the claim differentiation between the "connected" independent claim and the "integral" dependent claim. *Id.* (explaining that because "the claims describe the same relationship using different terms, the assumption is that the term in the dependent claim has a narrower scope"). No such claim differentiation argument can be made in this case because no dependent claims specify any specific manner of parts being "connected fixedly."

Looking more closely at *American Piledriving*, the case cuts even more strongly against Wonderland's argument. The plaintiff in *American Piledriving*

contended that the construction of "an eccentric weight portion connected to said cylindrical gear portion" had "erroneously required that the 'eccentric weight portion' be separate and distinct from the 'cylindrical gear portion.'" *Id.* at 1331-32. While the plaintiff believed that the gear should have been deemed part of the "eccentric weight portion" because "the gear is partly responsible for the uneven weight distribution of the counterweight" this Court rejected that nonsensical argument, holding that "[t]his interpretation cannot be correct as it would essentially require that the structure recited in claim 16 connect to itself." *Id.* at 1333.

Wonderland's argument that the language "crank connected fixedly to said motor shaft" should be construed to include a single, integrally-molded piece should be rejected for the same reasons. The crank and motor shaft are recited as two distinct elements in the claims, which strongly indicates that they are separate structures. *Id.*; *see also Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention."). It would be "facially nonsensical" to view those two distinct components as one and the same structure—a structure that is somehow, and illogically, "connected fixedly" to itself. *Id.* at 1255 ("If the hinged arm and the spring means are one and the same, then the hinged arm must

be ‘connected to’ itself and must ‘extend between’ itself and a mounting means, a physical impossibility. A claim construction that renders asserted claims facially nonsensical ‘cannot be correct.’”); *American Piledriving*, 637 F.3d at 1333.

The only other case cited by Wonderland to support its argument is *Animatics Corp. v. Quicksilver Controls, Inc.*, 102 Fed. Appx. 659, 666 (Fed. Cir. 2004) (non-precedential). This case is also unhelpful to Wonderland. The district court had construed a PID filter and microprocessor, claimed as “connected” to each other, to require the components to be physically separate circuits that were electrically connected. *Id.* at 665. This Court reversed because: (1) the patent indicated that the PID filter could be a digital circuit or could be implemented using only software, negating the physical separateness portion of the construction; and (2) the patent included examples of the digital and/or software-based PID filter being only “logically,” but not “electrically,” connected to the microprocessor. *Id.* at 666-67. The particular facts in that software/electrical case warranted a different result in large part because the nature of electrical “connections” starkly differs from mechanical connections. In this mechanical case, the ’609 Patent itself confirms that the meaning of “connected” used therein requires physically distinct pieces. *See supra.* No examples of integrally-molded parts, for example, are characterized as “connected” to even arguably broaden the meaning of the term in the context of the ’609 Patent.

To the extent that this Court's construction of the word "connected" in other cases not involving the '609 Patent affects the claim construction analysis at all, Thorley notes that this Court has deemed "connected" in the mechanical context to require the joining of separate pieces on multiple occasions. *See, e.g.*, *Regents of University of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 935-39 (Fed. Cir. 2013) (holding that describing two objects as "connected" "means that those objects were previously separate"); *Becton, Dickinson*, 616 F.3d at 1253–56 (holding that the term "connected" "contemplates that the spring means and the hinged arm are separate structures").

The district court correctly found that Wonderland failed to provide "relevant intrinsic or extrinsic evidence to support its argument." A0027. Wonderland continues this trend on appeal. *See, e.g.,* Wonderland Br. at 44 (proclaiming, without citation to any evidence, that the district court's construction reflects "an unwarranted reading of 'separateness' into the claim"). Wonderland still fails to grapple with the '609 Patent's clear use of the word "connected" in contrast to "integral," and fails to rebut the fact the plain meaning of "connected" implies a physical distinctness and excludes integrally-formed pieces. *See supra*. Instead, Wonderland focuses on the word "fixedly" rather than "connected," and contrasts "fixed" connections with "pivotal" connections that allow for rotation.

*See*, *e.g.*, Wonderland Br. at 29, 43. But this is entirely beside the point, and attempts to sweep the meaning of "connected" under the rug.

Finally, while Wonderland believes that the district court's construction was "[i]n essence … a theory of disavowal," nothing in the district court's opinion supports that characterization. Wonderland Br. at 45. Rather, the district court construed the term consistent with how it was used in the intrinsic record, which happens to also be consistent with and confirmed by extrinsic definitions showing the ordinary meaning. A0026-28. Just because the construction does not align with what Wonderland contends is the ordinary meaning of "connected" does not mean that a finding of disavowal necessarily occurred. Indeed, as the record reflects, Wonderland wholly failed to establish that the plain and ordinary meaning of "connected" was at all broader than the district court's construction.

For these reasons, the district court's construction of "connected fixedly" was correct and should be affirmed. Because this term alone supports the stipulated non-infringement judgment as to claim 3, this Court need not also reach the construction of the term "crank" to affirm the judgment.

### B. "Crank"

To the extent this Court is inclined to reach the issue of whether the district court also correctly construed the term "crank," the stipulated noninfringement judgment for claim 3 can likewise be easily affirmed on this basis. The district

court correctly construed "crank" to mean "an arm attached at a right angle to a shaft which turns about the axis of the shaft." A0023.

Wonderland contends that "crank," as used in the '609 Patent, should instead be construed to mean "a link in a mechanical linkage or mechanism that can turn about a center of rotation."[2] Wonderland Br. at 23. The thrust of Wonderland's position is to avoid the requirement that a crank be in the form of an "arm" because, as noted above, Wonderland accused a portion of an integrally-formed circular gear in the mamaRoo product as the alleged "crank":




[2] In the district court Wonderland alternatively argued that "crank" should be construed to mean "a device or part of a device for communicating motion or for converting reciprocating motion into rotary motion or vice versa." A0021. This construction, like the one Wonderland now asserts, was also overbroad, inconsistent with the specification, and unsupported by extrinsic evidence, as the district court held. *See* A0021-23.

A1706-12, A1716-17 (Wonderland contending that "[t]he part of the gear 87 from the center portion to the point of connection to the link 89 comprises the crank"); *see also* A1206-07.

Wonderland does not dispute that the specification is completely consistent with the district court's construction. Figs. 1 and 3 of the '609 Patent and the accompanying description disclose the crank as an arm attached to the motor shaft at a right angle so that the arm can rotate about the shaft's axis. '609 Patent, at 4:50-65.

By contrast, Wonderland's definition is completely inconsistent with the specification, which teaches that a "crank" is a narrowly-defined structure essentially limited to that shown in Figs. 1 and 3. Indeed, the '609 Patent goes so far as to expressly state that structure other than that shown in Figs. 1 and 3 is *not* a "crank." The second preferred embodiment is shown in Fig. 7, and the '609 Patent expressly states that this embodiment does not include a "crank" or a "link":




’609 Patent, at Fig. 7, 5:25-27; (“In this embodiment … the crank 61 (see Fig. 1), and the link 62 (see Fig. 1) are omitted.”). Conspicuously absent from this non-crank embodiment is any arm-shaped structure connected to a motor shaft at a right angle. Instead, the design of the Fig. 7 embodiment includes a horizontally-positioned threaded rod (7) which is rotated by the power mechanism (6), which includes a horizontally disposed motor shaft instead of a vertical motor shaft extending from the top of the power mechanism (6) as in Fig. 1. ’609 Patent, at 5:42-47. The specification explains that “[w]hen the threaded rod 7 is rotated by the power mechanism 6, the second projecting tooth 27 of the base 2 is moved along the second helical slot 72. Thus, the first rollers 82 reciprocate along the straight guiding rods 81, thereby resulting in a back-and-forth motion of the base 2 relative to the bottom seat 12.” ’609 Patent, at Fig. 8, 5:42-47.

This Fig. 7 embodiment includes structure that could easily be viewed as "a link in a … mechanism that can turn about a center of rotation" per Wonderland's construction, but the '609 Patent expressly disavows that the Fig. 7 embodiment includes any "crank" or "link" at all. This strongly indicates that the definition for crank must be considerably narrower and more limited along the lines of the arm "crank" shown in Fig. 1. *See Phillips*, 415 F.3d at 1315 ("[T]he specification … is the single best guide to the meaning of a disputed term.").

The claims and specification also expressly state that the crank has two "ends"—one attached to the motor shaft and the other attached to the link. '609 Patent, at Claim 1 (reciting "a crank connected fixedly to said motor shaft at *one end* thereof" and "a link having two ends connected respectively and pivotally to said base and *the other end* of said crank") (emphasis added); *id.* at 4:50-55. While an arm like the one disclosed in the '609 Patent has two such ends, the gear accused by Wonderland as the "crank" cannot reasonably be viewed as having these two claimed "ends." Rather, the accused "crank" is just a radial portion of the gear, the inner part of which is plainly in the center and not any terminal or "end" point. Had the '609 Patent intended for the claimed "crank" to include mere portions of a disc-shaped mechanism (*see* Wonderland Br. at 38-40) the patent would not have claimed it as having two "ends" connected to the motor shaft and link. Thus, Wonderland's reference to "disc-shaped" cranks allegedly shown in

the extrinsic evidence is misplaced as this type of "crank," assuming it is one, is clearly outside the scope of claim 1, which requires a crank with two ends.

Further, as the district court noted, Wonderland's use of the term "link" in its construction is highly problematic because "link" is used elsewhere in the patent to describe other components, and is even claimed separately from the crank. A0022-23; '609 Patent, at 4:51-55 ("The driving device 1 further includes a crank 61 connected fixedly to the motor shaft 60 at one end thereof, and a link 62."); '609 Patent, at Claim 1 (claiming "crank" and "link" as separate components). It is for reasons like this, which refute the plausibility of Wonderland's proposed construction, that Wonderland's brief is almost completely silent on the intrinsic record for what a "crank" is, and instead relies on a patchwork of extrinsic sources having little to do with what "crank" means in the context of the patent. *See* Wonderland Br. at 34-42; *see Phillips*, 415 F.3d at 1321 (explaining that "heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification").

Wonderland's definition is also overbroad when one looks beyond the specification. It is hard to imagine any rotating part that would not be considered "a link in a mechanical linkage or mechanism that can turn about a center of rotation"—i.e., a "crank" in Wonderland's view. Wonderland's definition would

include essentially any device capable of applying torque. Wonderland could have used a more functional term like "motion conversion element" as it did elsewhere (e.g., the claims' recitation of a "motion mechanism"), but it chose to precisely claim the specific structure of a particular device—a crank, as disclosed in Fig. 1.

Extrinsic evidence in the record, which the district court correctly viewed as "secondary to the intrinsic evidence" (A0022 n.12), confirms the accuracy of the construction in view of the intrinsic record. *See, e.g.*, A0545-46, A0549 (defining "crank" as "an arm keyed at right angles to the end of a shaft …."). The district court correctly found that extrinsic evidence relied on by Wonderland clearly defined the crank as an "arm," or otherwise defined "link" instead of "crank." A0022-23; *see, e.g.*, A1323 (engineering handbook defining "linkages"); A0411 (www.dictionary.com defining "crank" as "any of several types of arms or levers for imparting rotary or oscillatory motion"); A1319 (Norton engineering treatise pointing to an arm, not an entire disc, as the "Crank"). Thus, the district court expressly found the extrinsic evidence proffered by Wonderland "unconvincing" "to support [Wonderland's] position that a 'crank' can take any form." These findings, based on extrinsic evidence, are not clearly erroneous and must be affirmed. *Teva Pharms.*, 135 S. Ct. at 840-41.

Regarding the Wikipedia entry for the Hieropolis sawmill, which Wonderland contends proves that the meaning of "crank" includes discs, the

district court correctly determined that this article "appears to contain a right angled arm," and specifically "states that '[a] crank is an arm attached at right angles to a rotating shaft ….'" A0022 (citing A0685 and Wikipedia, *Crank*, http://en.wikipedia.org/wiki/Crank_(mechanism) (last visited January 10, 2013)). Wonderland is sharply critical of the district court in this regard, arguing that "[t]he district court apparently did not see the very next sentence which states 'the arm may be a bent portion of the shaft, or a separate arm *or disk* attached to it.' *See* Wikipedia, *Crank*, http://en.wikipedia.org/wiki/Crank_(mechanism) (last visited September 11, 2015) (emphasis added)." Wonderland Br. at 42. But the text referring to a "disk" in the Wikipedia article was not added to that entry until April 11, 2013, which was three months after the district court's *Markman* ruling.[3] Wonderland's criticism on this point is terribly misleading and unfair to the district court—the district court "did not see" this language because it did not exist at the time and was never part of the record.

Wonderland simply has no evidence in the record, intrinsic or extrinsic, that can justify construing "crank" to include something other than an arm-shaped structure attached to a motor shaft. As to the extrinsic evidence that was actually before the district court, the district court was well within its discretion to require

[3] Revision history of a Wikipedia article is available by clicking on the "View History" link at the top of the page. Doing so on the page at issue reveals that a user named Roly Williams first added language about a disk on April 11, 2013 at 1:46 pm. *See* https://en.wikipedia.org/w/index.php?title=Crank_(mechanism)&oldid=549844838.

the term "crank" to comprise an "arm." Because the district court's construction of "crank" was correct, the stipulated judgment of noninfringement should be affirmed. *Altiris*, 318 F.3d at 1368.

## II. SUMMARY JUDGMENT OF NONINFRINGEMENT OF CLAIM 14 SHOULD BE AFFIRMED BECAUSE NO REASONABLE JURY COULD HAVE FOUND THE MAMAROO PRODUCT MET THE "GUIDING ELEMENTS" OR "FIRST MOTION MECHANISM" TERMS, AS PROPERLY CONSTRUED

As with the stipulated noninfringement judgment for claim 3, the district court's summary judgment of noninfringement of claim 14 includes two distinct and independent bases to support the judgment. The mamaRoo contains neither a second pair of "guiding elements" nor a "first motion mechanism," as those terms were properly construed, and neither of these facts are subject to any material dispute that would preclude summary judgment of noninfringement.

### A. The Accused mamaRoo Product Does Not Contain the Second "Guiding Elements," as Properly Construed

The district court correctly found that the mamaRoo product does not include a second pair of "guiding elements" within the meaning of the '609 Patent. The claimed "guiding elements" were properly construed to mean "a set of tracks which direct movement," and the record is clear that Wonderland accused two portions of a flat surface that lack the required physical structure to direct movement. A0026; A0078-80.

### 1. *"Guiding Elements" was Correctly Construed to Require "A Set of Tracks Which Direct Movement"*

The district court's construction that the second "guiding elements" are "a set of tracks which direct movement" is considerably broader that the preferred embodiment disclosed in the '609 Patent. The '609 Patent depicts and describes the guiding elements as a set of parallel "guiding rods" (511, 411) where sets of rollers on the movable member (52) roll along the guiding rods. *See* '609 Patent, at Fig. 1, Fig. 7, 4:23-28, 4:36-49; 5:25-27, 5:41-47. Because the patent refers to "guiding elements" and not "rods" in the claims, the district court correctly declined to limit the claims to the rods embodiment. A0025. Thus, the district court plainly did not "limit a claim term … to a particular structure," as Wonderland argues. Wonderland Br. at 61.

Yet Wonderland contends that the construction should be broader still, defined as a mere set of "pathways" instead of "tracks." Wonderland Br. at 60-61. Wonderland seeks to avoid any structural connotation for the second "guiding elements" because it accused two portions of a single flat surface devoid of guiding structure as meeting this claim requirement in the mamaRoo product. A1370.

Although Wonderland notes that the patent and several claims also use the term "guide path unit," this does not mean that the "guiding elements" themselves must be construed to be "pathways." The term "pathway" does not appear in the patent and is unhelpful to discern the scope of the invention. A "pathway" is best

understood to reference the course or path itself, not what makes up the pathway. It is doubtful whether "a set of pathways" would even cover the guiding rods disclosed in the '609 Patent.

The "guiding *elements*" term can only make sense if defined as physical structures because, as the district court explained, the '609 Patent "uses the terms 'guide path unit' to express the idea of a guided path …, the term 'guiding elements' refers to the actual pieces that make up that 'unit.'" A0025; *see* '609 Patent, at 4:33-39 ("The second motion mechanism 5 includes a vertically varying second guide path unit 51 and a second movable member 52 movable along the second guide path unit 51 when the supporting rod 3 is in the released state. The second guide path unit 51 includes a pair of vertically curved guiding rods 511 parallel to and spaced apart from each other along a horizontal direction.").

While the guiding elements should not be limited to the preferred "rods," the patent teaches or suggests no alternative structures whatsoever. Thus, as the district court held, "a set of 'tracks' is appropriate to define the physical components of the 'guide path unit,' but allows for a broader definition beyond the embodied parallel rods." A0025. "A set of tracks" includes the rods embodiment disclosed in the patent as well as other functionally similar structures that

Wonderland accused,[4] but all must be physical structures that direct movement. A1368.

Wonderland's analogy to "a running track" is completely divorced from the context of the patent, and does not show that the construction given by the district court was improper. Wonderland Br. at 60. To the extent extrinsic meanings of "track" are relevant here, the guiding elements in the patent are far more along the lines of a set of train tracks, which have clear physical structure to serve a guiding purpose. And while Wonderland finds it "[i]ronic[]" that the patent does not use the word "tracks" (Wonderland Br. at 59 n.4), the patent does not use the word "pathways" either, and "tracks" is a far more accurate description of what the patent contemplates as the claimed "guiding elements."

Finally, as to Wonderland's assertion that the reexamination proceedings involved a finding that "flat surfaces constitute 'guiding elements,'" Wonderland's characterization of the record is misleading and untrue. While the Examiner pointed most expressly to the runways (14) in the Surbaugh patent as meeting the "guiding elements" portion of the claim, nothing in the Examiner's reasoning excluded the adjacent shoulders as Wonderland asserts. A2507; Wonderland Br. at

---

[4] Wonderland accused "rails or tracks" that have physical structures for directing horizontal movement as meeting the separate "first pair of guiding elements" claim requirement. A1368. Wonderland makes no effort to explain how its "set of pathways" construction is consistent with this accusation concerning the "first pair of guiding elements," which were never characterized in the district court as mere "pathways." A1368.

62 (contending that the "Examiner concluded that Surbaugh's runways 14 (and ***not*** the adjacent shoulders 16) are guiding elements") (emphasis in original). As the Surbaugh patent explained, the runways (14) and shoulders (16) cooperate to form a non-flat physical structure that limits the horizontal motion of the wheels (44). A2507; A1068, at 2:32-36 ("[T]he two wheels of each axle rest[] respectively on the two runways 14 of the base track 10, closely adjacent shoulders 16 … [whereby] shoulders 16 insure straight-line travel of said base."). The Surbaugh patent also states that the runways "form[] outwardly facing shoulders 16," indicating that the runways and shoulders are part of one and the same structure. A1068, at 2:10-11. It is for these reasons that the Surbaugh patent and the Examiner called the runways "*track* runways," consistent with the guiding elements of the '609 Patent, which comprise "a set of tracks." A1068 at 2:43-46; A2507. As with the intrinsic record, nothing in the reexamination history regarding the Surbaugh patent supports Wonderland's view that a flat surface can be considered a "guiding element" in the '609 Patent.

For the foregoing reasons, the district court correctly construed "guiding elements" to mean "a set of tracks which direct movement."

### *2. A Flat Surface Is Not a "Set of Tracks" Within the District Court's Construction*

Under the correct construction for "guiding elements," there is no genuine dispute of material fact that the flat surface Wonderland accused in the mamaRoo product is not "a set of tracks which direct movement." A0026; A1370.

The district court, giving Wonderland every benefit of the doubt, determined that a reasonable jury might find that the accused flat surface at least "direct[s] movement" in the sense that it "limit[s] the vertical movement of the wheels" of the accused double scissor mechanism—i.e., the flat surface prevents the wheels from falling vertically below the surface. A0079. The same cannot be said for the "set of tracks" portion of the district court's construction, for which the district court agreed with Thorley's argument that "there 'is no groove, rail, or other physical component extending from or embedded within this surface that could even potentially engage with or direct movement of the wheel.'" A0079-80.

It is beyond any reasonable debate that a flat surface has no structure that can be viewed as anything comparable to a "set of tracks" in the context of the '609 Patent and the exemplary rods disclosed therein. *See supra*. These accused flat portions of the base do not guide, direct, or otherwise affect the horizontal movement of the wheels across the surface in any way. *See* A1664-65; A1785; A2287; A1749. Wonderland's expert's report even affirmatively stated that "the bearing surface merely supports and keeps the rollers positioned or rolling <u>on</u> the/a

horizontal plane." A1749 (emphasis in original). Wonderland's expert was also unable to identify any three-dimensional physical structure on the surface as comprising the accused track, and instead vaguely referred to the space occupied by the rolling wheels. *See*, *e.g.*, A1811 (testifying that "the wheels, by virtue of where they roll, define … the tracks"); A1814 (the alleged tracks are merely "the space that those wheels take as they travel"). These admissions confirm that there is no genuine dispute of fact that the mamaRoo contains no second "set of tracks which direct movement."

Although the portions of the flat surface include two "indication lines" on either side of the regions in which the wheels roll, Wonderland admitted that the "indication lines" shown were not the accused "guiding elements," and that "the indication lines … do not serve any functional purpose with respect to guiding or directing movement of the wheel." A1785; A2287. Again, this removes any disputes of fact from the inquiry.

For these reasons, the district court correctly determined that "there are no other tracks—visible or otherwise—contained on the top surface of the base platform that could serve as guiding elements." A0080. No reasonable jury could deem this flat surface as including "a set of tracks which direct movement," and summary judgment of noninfringement of claim 14 was properly entered.

### B. The Accused mamaRoo Product Does Not Contain a "First Motion Mechanism" "For Driving" the Base that is "Disposed Between" the Base and the Bottom Seat, as Those Terms were Properly Construed

To the extent this Court reaches this additional, independent reason to affirm the judgment with respect to claim 14, the district court's constructions pertaining to the "first motion mechanism" were correct, and the evidence is undisputed that the mamaRoo product does not include a first motion mechanism "for driving" the base that is "disposed between" the base and the bottom seat.

Wonderland accused the wheels and tracks arrangement upon which the base moved as corresponding to the "first motion mechanism" in the patent, with the rails allegedly meeting the "first pair of guiding elements" claim requirements. A1365-68. The issue is that the back-and-forth motion is accomplished not only by the wheels and tracks, but also via the gear and linkage connected to the base:



A1661. Rotation of the gear by a motor causes the linkage to cyclically drive the base backward and forward, as Wonderland admitted. A2281-82 (Wonderland admitting that the gear and linkage "are for driving the base to move back and forth on the bottom seat"); A1806 (Wonderland's expert admitting same). As Wonderland's expert further admitted, the gear and linkage elements are not "disposed between" the base and the bottom seat. A1806-08 (Wonderland's expert admitting that the gear "[i]t's not disposed between those two elements [the base and bottom seat]," nor is the linkage "in that location"). The gear and linkage plainly sit above both the base and bottom seat. *See* A1661. Thus, to read its claims onto the mamaRoo product, Wonderland must avoid the inescapable fact that the gear and motor are "for driving" the base, or must nonsensically construe an object that is elevationally above two other objects to be "disposed between" the two objects below it.

Wonderland does not challenge the district court's construction of "for driving," which was "controlling or directing motion." A0069. Rather, Wonderland posits that the district court "fail[ed] to apply its construction" correctly. Wonderland Br. at 51. According to Wonderland, by erroneously treating the gear and linkage as part of the structure of the first motion mechanism "for driving," the district court concluded that because those gear and linkage components were plainly not "between" the base and the bottom seat, no

infringement existed. Wonderland Br. at 54. Wonderland also separately contends that "between" was construed incorrectly. Wonderland Br. at 55.

None of Wonderland's arguments have merit or warrant reversing the district court's entry of summary judgment.

### *1. The Gear and Linkage are Undisputedly Part of the First Motion Mechanism "For Driving," and are Not "Between" the Base and the Bottom Seat*

The district court construed the "for driving" term to mean "controlling or directing motion." A0069. As the district court observed, the '609 Patent uses the term "for driving" somewhat inconsistently. A0068-69. Sometimes it refers to the motor as "for driving," connoting powering or creating the motion, and sometimes it refers to the first and second motion mechanisms, connoting a lesser amount of control or direction of the movement. *Id*. Indeed, the entire '609 Patent is titled as being an "Infant Rocking Chair and Device for Driving the Same," suggesting that any number of combinations of parts are "for driving." Thus, the "controlling or directing motion" construction, which Wonderland does not challenge on appeal, appropriately reflects that "for driving" "does not require all of the components that contribute to driving, but still requires a minimum level of control or direction of the motion." A0069.

The claim language confirms that the crank and linkage elements, and not only the motor, are "for driving." Claim 12 recites the "first motion mechanism"

explicitly as "for driving," and the parties stipulated that the "first motion mechanism" is just "a combination of machine parts," which the gear and linkage in the mamaRoo product, along with the wheels and tracks, certainly are. A1084. While Wonderland suggests that the term "first motion mechanism" of claim 12 can only include the wheels and tracks (Wonderland Br. at 52-54), such a restrictive view would be inconsistent with the fact that claim 13, which depends from claim 12, further defines the "first motion mechanism" as "includ[ing] a first pair of guiding elements … and two parallel rows of rollers." '609 Patent, at Claims 12-13. This claim differentiation indicates that the "first motion mechanism" of claim 12, which is "for driving," must include *more* than just the wheels and tracks separately recited in claim 13. *See InterDigital Comms., LLC v. ITC*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) ("The doctrine of claim differentiation is at its strongest in this type of case, 'where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim.'"); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1316 (Fed. Cir. 2014) ("[T]he doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim."); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003) ("Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend.").

Beyond what the patent says about what components may be considered "for driving," Wonderland cannot genuinely dispute that the gear and linkage of the mamaRoo product are "for driving" under the district court's construction because both Wonderland and its expert admitted as much. A2281-82 (Wonderland admitting that the gear and linkage "are for driving the base to move back and forth on the bottom seat"); A1806. There is simply no genuine or reasonable dispute in the record about whether the gear and linkage in the mamaRoo product are "for driving"—they undisputedly contribute significant control and direction to the motion of the base, meeting the district court's construction and being fully consistent with how the '609 Patent characterizes different components as "for driving."

Because the gear and link elements are part of the first motion mechanism "for driving" the base, there can also be no reasonable dispute over whether those two elements are between the base and the bottom seat. As Wonderland's expert admitted, the gear is "not disposed between those two elements [the base and bottom seat]," nor is the linkage "in that location." A1806-08; A1661. As such, the mamaRoo product fails to meet all the claim requirements and cannot infringe claim 14 as a matter of law.

### *2. The District Court Correctly Construed "Between"*

The district court construed the term "between" to mean "in the space that separates." A0071. While Wonderland believes that "in intermediate relation to" would be a better construction, the district court correctly found that the '609 Patent "used precise language to specify the location of the first motion mechanism of Claim 12." A0070. The location of the first motion mechanism could have been defined in any number of ways, and indeed was defined more approximately as "disposed at the bottom seat" in claim 19, indicating that "the claim drafters were aware of their use of the term 'between'" to have a more precise meaning of "in the space that separates." A0070-71.

Wonderland contends that the district court's construction is inconsistent with the specification, but neither of Wonderland's examples establish any tension between the patent and the claim construction. First, the springs (541) in Fig. 12, described as "between" the bottom seat (12) and the free ends of the guiding rods (53) ('609 Patent, at 6:30-32) are plainly "in the space that separates" the bottom seat from the free end:




Likewise, in Fig. 3 the crank is clearly in the space that separates the base and the bottom seat:




While Wonderland implies that the "in the space that separates" construction would require the crank to be "*directly* below" the base, the construction is not so limited, and nothing in the district court's *Markman* order would imply such a restrictive meaning. Rather, these two examples from the specification confirm

that elements that are "between" in the elevational sense are within the scope of the claims. Indeed, in the reexamination proceeding, the PTAB specifically agreed that being elevationally between satisfied the claim language. A2546-47 ("In this instance, the fact that it is 'between' from an elevational standpoint is sufficient to meet the claim language."). This is consistent with the Examiner's statement made earlier in the reexamination proceedings that "between" "is broad enough to refer to a comparison of the relative *levels* of the elements." A2498 (emphasis added). In fact, this Court summarily affirmed the judgment of the PTAB on this very same issue despite Wonderland's argument that construing "between" to include an elevational relationship "is a result-based, but unreasonably broad, construction of the word 'between' that has no basis in the specification, or anywhere else." Wonderland Opening Brief in Appeal No. 15-1034, Dkt. No. 15, at 44 (Fed. Cir. Dec. 8, 2014); A2546-47 (PTAB decision that "the fact that it is 'between' from an elevational standpoint is sufficient to meet the claim language"); *Wonderland Nursery Goods*, 601 Fed. Appx. 991.

Wonderland also argues that "the crank of the first and third preferred embodiments … is not directly below the base," which would mean that the crank and link "would fall *outside* the scope of claim 12." Wonderland Br. at 56-57. This, according to Wonderland, would improperly exclude a preferred embodiment from the scope of the claims. *Id*. While this assertion is untrue given the proper

scope of "between" (*see supra*), even if claim 12 excluded a preferred embodiment where the first motion mechanism in its entirety is not directly below the base at all times, this embodiment is very well within the scope of claim 19's "disposed at" language. The district court's construction, at most, only excludes embodiments from claim 12 that were deliberately and distinctly claimed elsewhere. *See* A0071 (district court explaining that claim 12 was separately drafted "with precision to specify the location of an object 'in the space that separates'").

In sum, "between" was used in the patent to indicate the presence of an element "in the space that separates" two other elements. The element need not be "directly" between two other components such that a vertical straight line will always pass through the three recited elements, but must at least be in the space separating two components—e.g., elevationally. In the context of the '609 Patent, Wonderland's "in intermediate relation to" construction is vague, overbroad, and finds no support in the specification. The district court's construction of "between" should be affirmed.

*3. Nothing About the District Court' Summary Judgment Ruling Concerning the "First Motion Mechanism" Terms Conflicts with the USPTO's Rulings in the Reexamination*

Wonderland contends that the Examiner in the reexamination did not view structures analogous to the gear and linkage in the mamaRoo as being part of the

"first motion mechanism ... for driving," which Wonderland believes conflicts with the district court's judgment. Wonderland Br. at 47-50.

As a threshold matter, while Wonderland asserts that these findings were "rulings of the USPTO, as affirmed by the Federal Circuit" (Wonderland Br. at 46), neither the PTAB nor this Court ever addressed—let alone affirmed—the Examiner's findings now being raised by Wonderland because none of them were at issue before either tribunal. *See* A2539-49 (PTAB decision). There is no possibility of any conflicting judgments on these issues.

To the extent the Examiner's findings, made under entirely different evidentiary and legal standards, are relevant (*but see infra*), Wonderland also misapprehends the Examiner's findings, which are consistent with the district court's judgment. First, when the Examiner allegedly found that the claimed "first motion mechanism … did *not* include Nafte's motor 30, crank 31, or link 32," Wonderland omits that the Examiner's cited finding pertained to claim 1, not claim 12. Wonderland Br. at 47 (emphasis in original); A2447-49. Unlike claim 12, claim 1 specifically recites that the "first motion mechanism includ[es] a horizontal first guide path unit … and a first movable member … movable along [the] first guide path unit," but at the same time does not recite that "the first motion mechanism" is "for driving," reciting that feature with the motor. '609 Patent, at Claim 1. As discussed above, claim 12 recites a "first motion mechanism … for

driving," but adds similar structural details about the wheels and rails in dependent claim 13. It is hardly surprising that the Examiner identified the rollers and rails of the Nafte patent as meeting *claim 1*'s "first motion mechanism" which does not include the "for driving" language. A2448; A1617. The Nafte reference was not utilized in any rejections to claim 12 in the reexamination.

Similarly, Wonderland posits that the channels and rollers/guide wheels in the Nordella patent were the only structure identified as meeting the "first motion mechanism" requirement of claim 12. Wonderland Br. at 48-49. But the Examiner had only stated that the first motion mechanism "includes" those elements, not that it was limited to those elements. A2463; 2553.

Regarding the Kanaya rejections, although the Examiner distinguished the "motion mechanism" from the "power mechanism," the Examiner never restricted the first motion mechanism in claim 12 to exclude the crank and link elements. A2484-85; A2504. Rather, the Examiner indicated that structure of the first motion mechanism must "permit the base to be driven back and forth," which the crank and link certainly do. *Id.* The point is that the Examiner was not treating the crank and link as part of the *power mechanism* because they serve a less direct role in providing the energy that causes the reciprocating motion. *Id.* And, as described in the specification, the crank and link are at least one step removed from the power mechanism, and are described as part of the "driving device" and not the

"power mechanism." *See* '609 Patent at 4:50-53 ("The *power mechanism* 6 is configured as a variable speed motor including a vertical motor shaft 60. The *driving device* 1 further includes a crank 61 connected fixedly to the motor shaft 60 at one end thereof, and a link 62."); *id.* at 4:57-60 (explaining that "the *crank* 61 and the *link* 62 interconnected *between the power mechanism 6 and an assembly* of the first and second movable members 42, 52") (emphases added).

Ultimately, any perceived dissonance between the Examiner's view and the district court's interpretation need not be perfectly harmonized given that the claim construction law and procedure differ so greatly between the two contexts. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1189 (Fed. Cir. 2014) (explaining the "different evidentiary standards and rules for claim construction"). "[C]onsidering an issue at the district court is not equivalent to the PTO having had the opportunity to consider it," and the agency and the courts will sometimes diverge when interpreting patent claims. *In re Swanson*, 540 F.3d 1368, 1378 (Fed. Cir. 2008). Indeed, Wonderland itself previously argued that the district court should *not* adopt the USPTO's interpretation, stating that "[t]he two forms of proceedings are distinct, with different records and different standards of proof" such that the USPTO and a district court could "quite correctly come to different conclusions" on the same issues. A1310-11.

In short, the Examiner's findings are of little to no significance in this appeal. The alleged, but mistaken, inconsistency provides no basis to second guess the district court's well-reasoned claim construction of "for driving," which is unchallenged by Wonderland on appeal anyway. Wonderland Br. at 51-52.

## CONCLUSION

For the foregoing reasons, the judgment of the district court that claims 3 and 14 of the '609 Patent are not infringed by Thorley's mamaRoo product should be affirmed.

Respectfully submitted,

Dated: November 12, 2015

By: /s/ *Daniel H. Brean*
Kent E. Baldauf, Jr.
Daniel H. Brean
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd.
Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

*Counsel for Thorley Industries LLC*

# CERTIFICATE OF SERVICE

This is to certify that on November 12, 2015, copies of the foregoing Brief of Petitioner-Appellee were served on counsel for Respondent-Appellant via the Court's ECF system and via electronic mail upon the following:

David I. Roche
Daniel Tallitsch
BAKER & MCKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, IL 60601
312.861.8000
david.roche@bakermckenzie.com
daniel.tallitsch@bakermckenzie.com

/s/ *Daniel H. Brean*
Daniel H. Brean
*Counsel for Thorley Industries LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Jurisdictional Statement on page 1, and ending with the last line of the conclusion on page 69, including headings, footnotes, and quotations, is presented in Times New Roman 14-point font and contains 13,967 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

/s/ *Daniel H. Brean*
Daniel H. Brean
*Counsel for Thorley Industries LLC*