No. 2015-1878

# In the
# United States Court of Appeals
# for the Federal Circuit

WONDERLAND NURSERY GOODS CO., LTD.,

*Plaintiff-Appellant,*

v.

THORLEY INDUSTRIES LLC, dba 4Moms,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Pennsylvania, No. 2:12-cv-00196-NBF.
The Honorable **Nora Barry Fischer**, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLANT

DAVID I. ROCHE
(*Principal Counsel*)
DANIEL TALLITSCH
BAKER & MCKENZIE LLP
300 East Randolph Street
Chicago, IL 60601
(312) 861-8000
david.roche@bakermckenzie.com
daniel.tallitsch@bakermckenzie.com

*Counsel for Plaintiff-Appellant*
*Wonderland Nursery Goods Co., Ltd.*

Form 9

**FORM 9. Certificate of Interest**

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Wonderland Nurserygoods Co. v. Thorley Industries LLC

No. 15-1878

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) Appellant Wonderland Nurserygoods Co. certifies the following (use "None" if applicable; use extra sheets if necessary):

1. The full name of every party or amicus represented by me is:

Wonderland Nurserygoods Co. Ltd.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

No parent corporation and no publicly held company owns 10% or more of the stock of Wonderland Nurserygoods Co. Ltd.

4. ☑ The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

David I. Roche, Daniel A. Tallitsch, and Yi Fang of Baker & McKenzie LLP. Edward I. Levicoff and Avrum Levicoff of The Levicoff Law Firm, P.C.

08/13/2015
Date

/s/ Daniel A. Tallitsch
Signature of counsel

Daniel A. Tallitsch
Printed name of counsel

Please Note: All questions must be answered
cc: counsel of record

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST .......... i

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iv

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Stipulated Judgment of Noninfringement of Claim 3 Should Be Vacated .......... 1

1. Thorley fails to cite competent evidence for its proposed construction of "crank" .......... 1

a. Thorley attempts to read in limitations from the figures .......... 2

b. Thorley improperly seeks an advisory opinion on infringement .......... 3

c. The use of the term "link" is not problematic .......... 4

d. Wonderland is entitled to the full scope of the term "crank" .......... 5

e. A de novo standard of review applies .......... 5

2. Thorley cannot justify reading a separateness requirement into the "connected fixedly" limitation .......... 7

3. Wonderland is entitled to assert a doctrine of equivalents theory on the "crank" limitation on remand .......... 14

B. Summary Judgment of Noninfringement of Claim 14 Should Be Reversed .......... 15

1. The mamaRoo includes a "first motion mechanism disposed between said base the said bottom seat for driving" .......... 15

a. Thorley cannot argue for a construction of "first motion mechanism" that is different from the one it previously urged as applicable .......... 15

(1) Thorley successfully argued a broad construction in the USPTO .......... 15

(2) Thorley argued the same broad construction for purposes of invalidity in the district court.....18

b. Thorley's attempt to capitalize on the significance of the phrase "for driving" is unavailing .......................19

(1) Thorley admits that "for driving" has different meanings in different contexts .............19

(2) Claim differentiation does not apply here...........21

c. Thorley concedes that the district court applied an incorrect construction for the "between" limitation ......22

2. The mamaRoo includes "guiding elements"............................24

a. Thorley cannot argue for a construction of "guiding elements" that is different from the one it previously urged as applicable .....................................24

b. Thorley argues non-infringement based on limitations not present in the district court's claim construction..................................................................24

c. Thorley's construction for "guiding elements" is wholly unsupported .....................................................25

III. CONCLUSION...........................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
637 F.3d 1324 (Fed. Cir. 2011) ....................8, 11, 12

*Animatics Corp. v. Quicksilver Controls, Inc.*,
102 Fed. Appx. 659 (Fed. Cir 2004)....................13

*Beachcombers, Int'l, Inc. v. Wildewood Creative Prods.*,
31 F.3d 1154 (Fed. Cir. 1994) ....................15, 18

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................12, 13

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) ....................15

*Cardsoft, LLC v. Verifone, Inc.*,
2014-1135, 2015 U.S. App. LEXIS 20847 (Fed. Cir. Dec. 2, 2015) ....................6

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ....................3, 4

*Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*,
336 F.3d 1308 (Fed. Cir. 2003) ....................12

*Pegram v. Herdrich*,
530 U.S. 211, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000) ....................15

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................26

*Regents of the Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ....................13, 14

*Shire Dev., LLC v. Watson Technologies Ltd.*,
787 F.3d 1359 (Fed. Cir. 2015) ....................6

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................5, 9, 10, 25

**Other Authorities**

18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4477 (1981)....................15

18 MOORE'S FEDERAL PRACTICE § 134.30 (3d ed. 2000) ....................15

# I. INTRODUCTION

Every one of Wonderland's proposed constructions is grounded in the ordinary and customary meaning of the claims in the context of the specification and reexamination file history. In contrast, Thorley steers away from the merits of the case in favor of arguments that would require this Court to disregard well established precedent. Thorley's proposed constructions either require reading additional limitations into the claims by reference to the preferred embodiments or violate the fundamental principle that claims must be construed the same for validity and infringement.

# II. ARGUMENT

## A. Stipulated Judgment of Noninfringement of Claim 3 Should Be Vacated

### 1. Thorley fails to cite competent evidence for its proposed construction of "crank"

Thorley favors a definition of "crank" that improperly limits the scope of the claim to a single embodiment disclosed in the patent-in-suit and that is supported only by Wikipedia[1] and a general purpose dictionary. Thorley rejects competent evidence of how a person of ordinary skill would understand the term "crank", including the definition provided by McGraw-Hill Dictionary of Engineering ("[a] link in a mechanical linkage or mechanism that can turn about a center of

[1] But only at it existed prior to April 11, 2013. Red Br. at 49 n.3.

rotation") and corroboration provided by trusted mechanical engineering treatises. A1063; A1315-23.

Each of these sources standing alone provides insight on how a person of ordinary skill would understand "crank". Wonderland's proposed definition was taken *verbatim* from the McGraw-Hill Dictionary of Engineering which, along with its larger source – the McGraw-Hill Dictionary of Scientific and Technical Terms, is oft-cited and relied upon this Court. A1063. That definition is corroborated by Mark's Standard Handbook for Mechanical Engineers which states that "[i]t is customary to call a rotating link a crank" and Norton's textbook, Design of Machinery, which identifies a non-arm shaped "link 2" as a "crank." A1323; A1318-19.

#### a. Thorley attempts to read in limitations from the figures

Departing from the ordinary and customary meaning, Thorley narrowly crafted its definition of "crank" to cover the exact shape and configuration of the crank depicted in the figures while excluding other possible shapes and configurations. Red Br. at 44. Nothing in the text of the '609 patent requires the crank to be an "arm" that is attached to the motor shaft at a "right angle". Moreover, the '609 patent never uses the term "right angle", and refers to an "arm" only in the context of a person holding an infant. A103 at 1:26; A105 at 5:13-14.

Thorley's argument that the '609 patent "teaches that a 'crank' is a narrowly-

defined structure essentially limited to that shown in Figs. 1 and 3" is based on a false premise that the '609 patent "expressly states that th[e] embodiment [of Fig. 7] does not include a 'crank' or a 'link'." Red. Br. at 44-45. The '609 patent does not state that the Fig. 7 embodiment lacks a crank or a link. What the '609 patent ***actually*** says is that the specific "crank 61" and specific "link 62" of the first embodiment are not included in Fig. 7. Even if the '609 patent said that Fig. 7 entirely omits a crank, the threaded rod 7 is not a "link," and therefore cannot be a crank.

Even if Thorley's argument had any credence, the '609 patent's statement that Fig. 7 omits the "crank 61" and the "link 62" of the first embodiment is far from a "clear and unequivocal disclaimer" of claim scope that would justify departing from the plain and ordinary meaning of crank. Thorley, like the District Court, has not provided any justification for departing from the ordinary meaning of crank and reading limitations from the preferred embodiment depicted in the figures of the '609 patent. A1063.

#### b. Thorley improperly seeks an advisory opinion on infringement

Thorley's argument that the mamaRoo does not include a crank, Red Br. at 46-47, raises irrelevant issues of infringement and claim construction (meaning of "end"), neither of which were decided below. As such, it is tantamount to a improper request for an advisory opinion. *Golden Bridge Tech., Inc. v. Nokia, Inc.,*

527 F.3d 1318, 1322 (Fed. Cir. 2008) (as "a general rule . . . a federal appellate court does not consider an issue not passed on below"). Whether the mamaRoo includes a crank, and whether that crank has two ends (either literally or under the doctrine of equivalents), are not issues to be decided here, but on remand after "crank" is properly construed.

**c. The use of the term "link" is not problematic**

Thorley suggests that the use of the term "link" to define "crank" is "highly problematic because 'link' is used elsewhere in the patent to describe other components and is even claimed separated from the crank." Red Br. at 47. The term "link", however, refers to a genus of mechanical components, *i.e.*, "a connecting piece in the moving parts of a machine." McGraw Hill Dictionary of Engineering 328 (2nd ed. 2003 (reproduced at http://www.uefap.com/writing/research/dic_eg4.htm). A crank is simply one species of a link that is configured to turn about a center of rotation. A1063 (defining "crank"); A1318-19 (calling "link 2" in Figure 2-12(a) a "crank"); A1323 ("it is customary to call a rotating link a crank"). The "link" expressly called out in the '609 patent is a different species of link with a different configuration and purpose: *i.e.*, "having two ends connected respectfully and pivotally to said base and the other end of said crank such that rotation of said motor shaft results in reciprocal movement of said first movable member." A105 at 6:64-67. Thus, using the term "link" is far from problematic.

### d. Wonderland is entitled to the full scope of the term "crank"

In a further attempt to restrict the claim to the preferred embodiment, Thorley argues that Wonderland's definition is "too broad". Red Br. at 47-48. Wonderland's definition makes no mention of a generic "device" that "appl[ies] torque." Rather, it is much more limited and requires a crank to be: (1) a link (*i.e.*, a connecting piece in the moving parts of a machine); (2) part of a mechanical linkage or mechanism; and (3) able to turn about a center of rotation. A1063; A1318-19; A1323.

Even if the ordinary meaning of "crank" is broad enough to include any rotating part, that is no reason to read shape and orientation limitations into the claim. It is well established that a "patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

### e. A *de novo* standard of review applies

Thorley incorrectly tries to impose a clearly erroneous standard of review to the court's construction of "crank" by characterizing the district court's determination ***not*** to rely on that extrinsic evidence as a finding of fact. Red Br. at 48 ("the district court expressly found the extrinsic evidence proffered by Wonderland "unconvincing"). Not only is a court's characterization of evidence not

a "finding", the presentation of extrinsic evidence in a claim construction hearing does not trigger a clearly erroneous standard of review. To the contrary, a *de novo* standard of review applies unless the district court affirmatively made, and relied on, a factual finding upon which it based the disputed claim construction:

> [A]s we have repeatedly held after Teva, it is not enough that the district court may have heard extrinsic evidence during a claim construction proceeding—rather, the district court must have actually made a factual finding in order to trigger Teva's deferential review.

*Cardsoft, LLC v. Verifone, Inc.*, 2014-1135, 2015 U.S. App. LEXIS 20847, at *6-7 (Fed. Cir. Dec. 2, 2015); *see Shire Dev., LLC v. Watson Technologies Ltd.*, 787 F.3d 1359, 1368 (Fed. Cir. 2015) (The Supreme Court's ruling in *Teva* "[does] not hold that a deferential standard of review is triggered any time a district court hears or receives extrinsic evidence.").

As Thorley concedes, the district court simply received but did not rely upon, on the extrinsic evidence provided by Wonderland. Red Br. at 48. The district court based its construction of "crank" "in light of its ***use in the patent*** and the ordinary meaning." A23 (emphasis added). The district court's determination of the significance (or lack thereof) to attribute to extrinsic evidence is not a factual finding, and a *de novo* standard of review applies.

Thorley is left to rely upon exaggerated interpretations of the district court's

ruling. The district court did not "find" that ***all*** of the extrinsic evidence defined a crank as an arm or otherwise defined link instead of crank. Red Br. at 48, citing A22-23. In fact, it could not have done so, because the term "arm" is nowhere used in the definition of crank provided by the McGraw-Hill Dictionary of Engineering, the cited pages of Marks Standard Handbook for Mechanical Engineers, or the cited pages of Norton's Design of Machinery. A1063; A1321-23; A1315.

Even if a clearly erroneous standard applies, Wonderland still prevails. For example, the text of Norton makes clear that the arrow referred to the ***entire*** "link 2" as the "crank", and never uses the term "arm". A1318 ("The input crank (link 2) is typically motor driven at a constant speed"); *see* Red Br. at 48, citing A22, A1319. In addition, Mark's Handbook provides a clear definition for "crank": "It is customary to call a rotating link a crank." A1323; *see* Red Br. at 48, citing A22-23 and A1323.

### 2. Thorley cannot justify reading a separateness requirement into the "connected fixedly" limitation

Thorley argues that the term "connected fixedly" requires the crank and the motor shaft to exist at a previous point in time as separate pieces before they are connected together. *See, e.g.*, Red Br. at 37 ("Two parts need to be separate and disconnected before they can possibly be considered 'connected' to each other"). Thorley cannot justify this predicate "separateness" requirement, which contradicts the ordinary meaning of "connected". Blue Br. at 42-45. The term "connected," in

its ordinary sense, encompasses both mechanically and integrally connected parts. *See Id.; Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1335 (Fed. Cir. 2011) (construing "an eccentric weight portion *connected* to said cylindrical gear portion" to "encompass 'united,' one-piece counterweights as well as counterweights consisting of two pieces that are 'joined together.'").

Nothing in the intrinsic record supports Thorley's predicate "separateness" requirement. Instead, Thorley asks this Court to rely on assumptions about the manufacturing process. In particular, Thorley contends that the word "connected" is used by the '609 patent only to describe separate pieces which are subsequently "connected" together, and is never used to describe portions of the same integral or unitary piece. Red Br. at 35. Thorley never supports its assertion and instead just assumes that because certain parts are separately called out by the '609 patent with different names and reference numbers, they were previously separate. Thorley's assumption is false. Proving this point, the base 2 is made up of multiple, ***integrally connected*** parts that have different names and reference numbers, including at least the substantially rectangular plate 21, the frustoconical connecting member 22, and the supporting legs 26. *See, e.g.*, A89-92 at Figs. 2-5. None of these components ever existed as separate parts as they were formed together in a connected manner. *Id.*; A104 at 4:30-32. More importantly, many of the so-called "connected" components are never shown or described in the '609

patent as separate pieces, including the crank and motor shaft, the two components at issue in claim 1.

Thorley also argues that the word "integrally" is the only term used to refer to unitary structures. *Id.* In essence, Thorley argues that the '609 patent redefines the term "connected" by implication. This Court rejected a similar argument in *Thorner*, 669 F.3d at 1365, where Sony argued that the limitation "attached to said pad" should be construed as affixed to the exterior surface of the pad and does not include embedded within the pad. Accepting Sony's construction, the district court pointed out that the specification consistently used the term "attached" to indicate affixing an actuator to the outer surface of an object and consistently used the term "embedded" when referring to an actuator inside an object. *Id.* In reversing the district court's construction, the Federal Circuit held that "[i]t is not enough for a patentee to simply . . . use a word in the same manner for all embodiments, the patentee must 'clearly express an intent to redefine the term." *Id.* at 1365, 1367-68.

Similarly, the patentee of the '609 patent did not clearly express any intent to redefine the term "connected," nor did the patentee disavow any claim scope. "The fact that the specification uses the two terms ['connected' and 'integrally'] as alternatives does not require a different result." *Id.* at 1368. There is nothing inconsistent about using the narrower term "integrally" to refer to two parts being formed together in a unitary structure. The plain and ordinary meaning of

"integrally" is narrower than "connected." Hence it makes sense that the applicant would use the term "integrally" when it meant to explicitly refer to integral connections, and use "connected" when it meant to broadly refer to either mechanical or integral connections. *Id.*

Building on its flawed argument, Thorley suggests that the term "attached" is synonymous with "connected" and is also only used in the '609 patent to refer to two separate pieces that are brought together. Red Br. at 36. Thorley fails to recognize that the '609 patent also uses the term "disposed on" as synonymous with "connected". The term "disposed on", however, is used to refer to both separate pieces brought together and two parts that are integrally connected. A104 at 3:33-36; 4:23-25.

Thorley wrongly suggests that its proposed definition aligns with the ordinary meaning because "the acting of 'connecting' amounts 'to join[ing] or fasten[ing] together usually by something intervening." Red Br. at 36-37. Thorley also cites to the district court for the incorrect proposition that "to form a 'connection,' one must 'join or fasten together' parts which, absent the connection, would otherwise be separate or apart. *Id.* The claim at issue is not a method claim and does not require an "act of connecting." Moreover, common sense dictates that two parts that are integrally formed are, by their very nature, "connected" (*i.e.*, joined together).

In that regard, Thorley's example of "connected" bones actually supports Wonderland's construction. *See* Red Br. at 37. The concept that bones are "connected" does not meet Thorley's "separateness" test. It is entirely ordinary and natural to say that a person's arms and legs are connected to his or her torso, even though those body parts were formed as parts of an integral, unitary structure. More specific to Thorley's example, human bones were never separate and disconnected, yet it is ordinary and natural to say that they are "connected" together. *Cf.* Red Br. at 37 ("Two parts need to be separate and disconnected before they can possibly be considered 'connected' to each other.").

Thorley's attempt to distinguish *American Piledriving* fails. Red Br. at 38-39. The meaning of the term "connected," and its relationship to the term "integral," was expressly at issue in that case, just as it is here. *Cf.* 637 F.3d at 1335 *and* Red Br. at 35 (Thorley arguing that the '609 patent uses the term "connected" in a different way than "integrally"). In *American Piledriving*, the Federal Circuit found, just as it should here, that the term "connected" is broader than and encompasses the term "integral." 637 F.3d at 1335.

Thorley's selective quotations from *American Piledriving* are misleading and ultimately unavailing. Red Br. at 38-39. The "separate and distinct" language from *American Piledriving* was unrelated to the Court's comparison of the terms "connected" and "integral", but rather pertained to the Court's construction of

"eccentric weight portion." 637 F.3d at 1333. Moreover, *American Piledriving* did not use the terms "separate and distinct" in the same manner as Thorley would have the Court believe. This Court merely required – while contemplating that the connection could be mechanical or integral – that there be a defined boundary between the eccentric weight portion and the cylindrical gear portion. *Id.* (quoting the specification of the patent-in-suit: "[t]he eccentric weight portion of the counterweight, which is formed integral with the gear portion, *extends forward from the front face of the gear portion*.") (emphasis in original).

Thorley's reliance on *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010) is equally misplaced. Red Br. at 39-40. While the Court in *Becton* held that the claimed spring means needs to be a separate structural element from the hinged arm, nothing in *Becton* precludes the spring means from being integral with the hinged arm. 616 F.3d at 1253-54. As in *American Piledriving*, the Court in *Becton* merely precluded the patentee from asserting that the hinged arm was the spring by requiring a defined boundary between the two.

Notably, this Court's "separate and distinct" requirement represents an exception to the "well-established" rule that a single structure in an accused device may satisfy two different claim limitations. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1320 (Fed. Cir. 2003).

In *Becton*, the majority justified the exception by with a plethora of evidence, including warnings in the specification and concerns of invalidity. 616 F.3d at 1254-55. No similar evidence exists in this case.

Thorley's attempt to distinguish *Animatics Corp. v. Quicksilver Controls, Inc.*, 102 Fed. Appx. 659 (Fed. Cir 2004) also fails. While the components in *Animatics* were ultimately electrical in nature, the issue was the same as in this mechanical case: whether "connected" connotes "physically separate" components. *Id.* at 666. Considering essentially the same dictionary definition presented to the district court in this case, the Court in *Animatics* held that "connected" encompasses integral connections. *Id.*

Finally, Thorley argues that this Court has deemed the term "connected" in the mechanical context to require the joining of separate pieces on multiple occasions. Red Br. at 41. Thorley is mistaken. As discussed above, *Becton* did not construe the term "connected" nor did it require two parts to exist at a prior moment in time as separate structures before they can be "connected".

The only other case cited by Thorley, *Regents of the Univ. of Minn. v. AGA Med. Corp.*, is inapposite as it also did not construe the term "connected." 717 F.3d 929 (Fed. Cir. 2013). Instead, the claim limitation at issue called for two occluding disks to be "affixed" to one another at their centers, to "define a conjoint disk." *Id.* at 934. Pivotal to the decision in *Regents* was the term "conjoint disk,"

which the Court noted "emphasizes both the togetherness of a joining *and the separateness of the things joined*." *Id.* at 937 (emphasis in original). Unlike *Regents*, the claims at issue in this case do not include the term "conjoint" or any other similar term.

Because Thorley has failed to justify departing from its plain and ordinary meaning, the term "connected fixedly" should be construed as "joined or linked securely" and to encompass integral connections.

**3. Wonderland is entitled to assert a doctrine of equivalents theory on the "crank" limitation on remand**

Thorley incorrectly asserts that Wonderland needs to prevail on both the "crank" and "connected fixedly" limitations to have the case remanded on claim 3. Wonderland did not waive its doctrine of equivalents theory of infringement when it stipulated to non-infringement. Accordingly, a remand is the proper remedy should the Court agree that the district court misconstrued the "connected fixedly," even if the Court finds that the "crank" limitation was properly construed.

## B. Summary Judgment of Noninfringement of Claim 14 Should Be Reversed

### 1. The mamaRoo includes a "first motion mechanism disposed between said base the said bottom seat for driving"

#### a. Thorley cannot argue for a construction of "first motion mechanism" that is different from the one it previously urged as applicable

##### (1) Thorley successfully argued a broad construction in the USPTO

The interpretation given patent claims to determine infringement must be the same interpretation given those claims in deciding validity. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001); *Beachcombers, Int'l, Inc. v. Wildewood Creative Prods.*, 31 F.3d 1154, 1163 (Fed. Cir. 1994) ("We have already interpreted the claims for purposes of assessing their validity. The same interpretation of course applies to the infringement analysis."). Additionally, judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000); *see* 18 MOORE'S FEDERAL PRACTICE § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 4477, p. 782 (1981).

Here, not only did Thorley take a position on the construction of "first motion mechanism" whereby that term included only wheels and rails, it successfully urged that construction in the *inter partes* reexamination of the '609 patent. Thorley successfully argued that the first motion mechanism of Nordella was only the "channels (86) and guide wheels (83)" and ***not*** the hydraulic cylinder or connecting rod. A734. It had to exclude the hydraulic cylinder and connecting rod from the first motion mechanism because those components are indisputably not between the base and bottom seat. A50.




This argument was accepted by the PTO Examiner and, contrary to

Thorley's assertion otherwise, was adopted by the PTO Board and affirmed by this Court. A2463; A2547 (adopting the Examiner's conclusion that "Nordella teaches all of the elements of claim 12"). Long-established precedent of this Court and principles of judicial estoppel bar Thorley from now urging a different construction of claim 12 (and 14).

Thorley mischaracterizes the Examiner's position as one in which he merely contended that the first motion "included" the wheels and channels. Red Br. at 67. The Examiner adopted Thorley's contention, *verbatim*, and found the wheels and channels to ***be*** the first motion mechanism, and for the reason discussed above had to limit this element to the wheels and channels for the Nordella reference to meet the "between" limitation.

Thorley took a very similar position in arguing that the Kanaya patent anticipated claims 12 and 13, identifying only the "tracks (20) and wheels (40)" as being disposed "between" the base and the bottom seat. A745. That argument was adopted by the Examiner and, thus, claims 12 and 13 were ultimately found to be invalid. A673; A2564.

Thorley has obtained the benefit of a broad construction of "first motion mechanism disposed between said base and said bottom seat for driving…" as recited in claims 12-14, resulting in the cancellation of claims 12 and 13. Under this Court's precedent requiring the same construction for both validity and

infringement, and the principle of judicial estoppel, Thorley cannot now argue a more narrow construction.

**(2) Thorley argued the same broad construction for purposes of invalidity in the district court**

Thorley is not simply making different arguments in different proceedings. Red Br. at 66. With respect to Nordella, Thorley has made the same argument in the district court that it made in the USPTO; that is, Nordella's "first motion mechanism" includes only the "wheels (83) and channels (86)", to the exclusion of Nordella's hydraulic cylinder and connecting rod. Having made that invalidity argument, Thorley has undermined its noninfringement argument that is based on a construction of "first motion mechanism" that encompasses not only the wheels and rails but also the gear and link of the mamaRoo.

These constructions cannot coexist because the same construction must be used for both invalidity and infringement. *Beachcombers*, 31 F.3d at 1163. Nordella's hydraulic cylinder and connecting rod, which are powered by a fluid pump not shown, are analogous to the mamaRoo's gear and link, which are powered by an electric motor. The district ruled that a question of fact existed as to whether Nordella's hydraulic cylinder and connecting rod were part of a "first motion mechanism." A52. If there is a question of fact as to whether Nordella meets this limitation, so should a question of fact exist as to the mamaRoo.

### b. Thorley's attempt to capitalize on the significance of the phrase "for driving" is unavailing

#### (1) Thorley admits that "for driving" has different meanings in different contexts

Thorley admits that the '609 patent uses the term "for driving" in connection with the "motor" limitation differently than it uses the term in connection with the "first motion mechanism" limitation. Red Br. at 59. Thorley acknowledges that: (i) when used in connection with the "motor" limitation, "'for driving' connot[es] powering or creating the motion"; (ii) when used in connection with the "first motion mechanism" limitation, "for driving" "connot[es] a lesser amount of control or direction of the movement". *Id.*

This supports Wonderland's contention that the limitation of claim 12 calling for a "first motion mechanism for driving" does not encompass the same components as the "motor for driving" limitation of claim 1. *See* A105 at 6:59-67 (defining the crank and link as part of the motor). It also demonstrates that the "first motion mechanism for driving" cannot include the components of the mamaRoo that power or create the motion: *i.e.*, the motor and its associated crank and link.

Thorley hopes to avoid this obvious result by arguing that the crank and link elements are distinct from the motor and instead form part of the first motion mechanism. Red Br. at 59-60. That is simply not the case. The crank and link

elements are parts of the "motor" and indisputably create the motion. In the '609 patent, the term "motor" is used broadly to encompass all of the structures that power or create the motion, while the term "first motion mechanism" is used to narrowly refer to only those structures that permit the motion, the rails and wheels. Indeed, claim 1 explicitly states that:

> ***said motor includes: a motor shaft, a crank*** connected fixedly to said motor shaft at one end thereof, and ***a link*** having two ends connected respectively and pivotally to said base and the other end of said crank such that rotation of said motor shaft results in reciprocal movement of said first movable member.

A105 at 6:55-67 (emphasis added). Similarly, the specification distinguishes the "first motion mechanism" from the components that power or create the motion. The "first motion mechanism" for all three embodiments is described as including ***only*** guiding rods and rollers, while the "power mechanism" or "motor", which creates the motion, is described as including the motor shaft, crank, and link. A104 at 4:21-32, 50-65; A105 at 5:41-42, 6:15-18, 55-67.

Ignoring its own admission, Thorley mischaracterizes Wonderland's statement that the crank and link of the mamaRoo are "for driving" as supporting Thorley's argument. Red Br. at 58, 61. Wonderland's statement that the mamaRoo's crank and link are "for driving" was intended to convey the notion that

those components are part of the motor and therefore are for "powering or creating motion." Wonderland's statement was not an admission that the crank and link constitute part of the "first motion mechanism . . . for driving".

Because Thorley and the district court incorrectly applied the "first motion mechanism for driving" limitation as including the crank and link of the mamaRoo – structures that do not "permit motion," but instead actually "power or create motion" – the district court's finding that the mamaRoo lacks that limitation should be reversed.

**(2) Claim differentiation does not apply here**

Compounding its erroneous reasoning, Thorley misapplies the doctrine of claim differentiation to argue that the "first motion mechanism" of claim 12 "must include *more* than just the wheels and tracks separately recited in claim 13." Red Br. 60 (emphasis in original). Quite the contrary, claim 13 of the '609 patent shows that the applicant intended that "a first pair of guiding elements . . . and two parallel row of rollers" will fully satisfy the "first motion mechanism" limitation of claim 12.

In making its claim differentiation argument, Thorley also erroneously conflates Wonderland's proposed construction of the "first motion mechanism for driving" limitation with its identification of the "first motion mechanism" in the mamaRoo. To be clear, Wonderland does not contend that the "first motion

mechanism" limitation of claim 12 must be narrowly construed as "wheels and tracks." Instead, Wonderland contends that the "first motion mechanism" limitation broadly covers the structures that "permit movement," ***such as*** the wheels and tracks of the mamaRoo, and excludes structures that actually power or create the motion, ***such as*** the crank and link of the mamaRoo. In that regard, Thorley wrongly asserts that claim 12 and 13 have the same scope under Wonderland's construction of the "first motion mechanism for driving" limitation. The claim differentiation doctrine is simply not applicable in this case.

#### c. Thorley concedes that the district court applied an incorrect construction for the "between" limitation

In a failed attempt to rebut Wonderland's arguments, *see* Blue Br. at 55-58, Thorley proffers a new and different construction for "between" that requires a comparison of the relative levels of the elements. Red. Br. at 62-65. The district court's definition, "in the space that separates," is different from and much more narrow than Thorley's newly-proposed definition. This argument makes it clear that Thorley, like Wonderland, disagrees with the district court's construction of between.

Proving that Thorley's new construction is different, it is nonsensical to say that a person standing outside a home is disposed "in the space that separates" the roof of a house from the foundation it stands on, even though that person could be said to be between the relative levels of those structures. It is equally nonsensical

to say, as Thorley does, Red. Br. at 62-63, that the springs 541 in Fig. 12 are "in the space that separates" the bottom seat 12 and the free ends (532) of the guiding rods (53). The same can be said for Thorley's assertion that the cranks of the preferred embodiments are located "in the space that separates" the base and the bottom seat, Red Br. at 63.

Like the district court's, Thorley's construction is simply wrong and inconsistent with the ordinary meaning of "between". Saying that something is between ***the relative level*** of two structures is different and more restrictive than saying it is between those structures. The claim at issue here broadly calls for the first motion mechanism to be disposed between the base and the bottom seat, not between their relative levels. Because the patentee did not act as a lexicographer or disavow any claim scope, the term between should be accorded its ordinary meaning, which is "in intermediate relation to". Blue Br. at 55.

Whether this Court agrees with Wonderland's construction (in intermediate relation) or Thorley's newly-proposed construction (requiring a comparison of the relative levels of the elements), the parties' implicit agreement that the district court's construction of "between" is incorrect requires a reversal of the district court's finding that the mamaRoo lacks the "first motion mechanism" limitation of claim 12.

### 2. The mamaRoo includes "guiding elements"

#### a. Thorley cannot argue for a construction of "guiding elements" that is different from the one it previously urged as applicable

Thorley is barred from arguing that a "guiding element" must be more than a flat surface, because it successfully argued that the flat "runway", *i.e.*, element 14 of the Surbaugh patent was a "guiding element", albeit in the context of claim 20. A762-63. By making reference only to the "track runways (14)" and by not referring to the shoulders 16, Thorley made it clear that it considered the runway alone to meet the "guiding element" limitation. These two components, numbers 14 and 16, are separately shown and described in the Surbaugh patent. A1067.

Thorley advocated this construction and the PTO Examiner adopted it. A2507. Thus, Thorley cannot now adopt a different position to advance any of its noninfringement arguments. *See supra* at III.B.1.a(1).

#### b. Thorley argues non-infringement based on limitations not present in the district court's claim construction

Thorley improperly attempts to impose two additional, narrowing limitations into the district court's construction of "guiding elements":

(1) a "groove, rail, or other physical component extending from or embedded within this surface that could even potentially engage with or direct movement of the wheel," Red Br. at 55; and

(2) that the guiding elements guide "horizontal movement". *Id.*

The district court's construction of "guiding elements" does not require a track to be three-dimensional or direct movement in a particular direction. A26. It merely requires the track to "direct movement". *Id.* In fact, the district court held that the term "guiding elements" allows for a broader definition beyond the embodied parallel rods. A25.

Thorley does not dispute that the mamaRoo's flat, bordered paths "'direct movement' in the sense that [they] limit the vertical movement of the wheels of the accused double scissor mechanism." Red Br. at 55. This alone demonstrates that a material question of fact exists that should have precluded the district court's entry of summary judgment of non-infringement.

For these reasons, summary judgment of non-infringement based on the "guiding elements" limitation should be reversed. Material questions of fact exist for resolution by a jury.

**c. Thorley's construction for "guiding elements" is wholly unsupported.**

Claim terms are generally given their plain and ordinary meanings to one of skill in the art when read in the context of the specification and prosecution history. There are only two exceptions to this general rule: (1) when a patentee sets out a definition and acts as his own lexicographer; or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. *Thorner*, 669 F.3d at 1365.

Thorley advocates the district court's construction for "guiding elements": *i.e.*, "a set of tracks which direct movement." Red Br. at 51. However, unlike the district court, Thorley clearly urges that the term "track" only refers to a "groove, rail or other physical component" *Id.* at 55. Thorley fails to cite any evidence – intrinsic or otherwise – to support its proposed construction. Thorley arbitrarily selects the word "track" – a word Thorley admits is never used in the '609 patent, Red Br. at 53. Thorley attempts to justify its choice of words by arguing that the term "track" is "considerably broader tha[n] the preferred embodiment disclosed in the '609 patent." *Id.* But, even if true, this is not how courts are to construe claims.

Absent one of the two exceptions, *i.e.*, lexicography and disavowal, which Thorley does not suggest are applicable, the construction must be based on the plain and ordinary meaning in the context of the entire patent, including the specification, of which the claim is a part. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005). Thorley violates this tenet by proposing a construction of "guiding elements" that is entirely divorced from the disclosure of '609 patent and was crafted with the goal of avoiding infringement. In contrast, Wonderland's proposed construction – "a set of pathways which control or direct movement," Blue Br. at 60-62 – is grounded in the intrinsic evidence and is consistent with the ordinary and customary meaning of "guiding elements" in the context of the '609 patent.

Indeed, several claims of the '609 patent (*i.e.*, 1, 2, 4-6, 8, 9, 11, 19 and 20) explain that the claimed "guiding elements" make up a "guide path unit". A105-06. For instance, claim 6 states that the "second guide path unit includes a pair of parallel vertically curved guiding elements". Thorley struggles with this fact, and argues without support that "this does not mean that the 'guiding elements' themselves must be construed to be 'pathways'". Red Br. at 51. This is nonsensical. It is only natural that the term "guiding elements" should encompass a "path," otherwise, how could they form a "guide ***path*** unit"? Common sense tells us that a "guide path unit" must encompass guiding elements in the form of a path or pathway.

Thorley attempts to justify its use of the word "track" by arguing that the '609 patent also does not use the term "pathway". Red. Br. at 53. This is a misleading argument because the '609 patent repeatedly uses the term "path". A105-06 at claims 1, 2, 4-6, 8, 9, 11, 19 and 20. In contrast, the '609 patent does not use any form of the word "track."

Thorley admits that "the guiding elements should not be limited to the preferred 'rods'" of the '609 patent, Red Br. at 52, yet that is exactly what the district court did when it equated the claim term "guiding elements" with a "track", and subsequently found that a track needed to be a "groove, rail, or other physical component extending from or embedded within this surface that could even

potentially engage with or direct movement." A79-80. That is also exactly what Thorley is asking this court to do when it argues that "the guiding elements in the patent are far more along the lines of a set of train tracks, which have clear physical structure to serve a guiding purpose." Red Br. at 53.

Notwithstanding the lip service Thorley pays to the correct standard for claim construction, Thorley wants this Court to limit the scope of "guiding elements" to the preferred "rod" embodiment of the '609 patent. Thorley, however, has failed to cite any evidence that would support a departure from the plain and ordinary meaning of "guiding elements." Effectively admitting that no exception applies, Thorley does not argue that the patentee of the '609 patent acted as a lexicographer or disavowed any claim scope.

The district court acknowledged that a reasonable jury could conclude that the top surfaces (*i.e.*, the structures that Wonderland contends is the track or path for the wheels, and thus qualifies as guiding elements) "controls or directs vertical movement of the wheels because the top surface would limit the vertical movement of the wheels." A79.

Thus, because Thorley's proposed construction of "guiding elements" does not comport with the plain and ordinary meaning of that term in the context of the entire patent, and because the Court acknowledged that there was a genuine question of fact about whether the structure in question (*i.e.*, the paths along which

the wheels of the scissor mechanism ride) controls the vertical movement of the accused device, the Court should remand this case for trial.

## III. CONCLUSION

For the foregoing reasons, stipulated judgment of non-infringement of claim 3 should be vacated, summary judgment of claim 14 should be reversed, and the case remanded for further proceedings upon legally correct constructions.

Dated: December 10, 2015

/s/ Daniel A. Tallitsch
David I. Roche
Daniel A. Tallitsch
BAKER & McKENZIE LLP
300 East Randolph Street
Suite 5000
Chicago, Illinois 60601
(312) 861-8000
*Attorneys for Appellant Wonderland Nurserygoods Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,481 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

Dated: December 10, 2015

/s/ Daniel A. Tallitsch
Daniel A. Tallitsch
*Counsel for Plaintiff-Appellant*
*Wonderland Nursery Goods Co., Ltd.*

# United States Court of Appeals
# for the Federal Circuit

WONDERLAND NURSERYGOODS CO. V. THORLEY INDUSTRIES , LLC, 2015-1878

## CERTIFICATE OF SERVICE

I, Gary Y. Chyi, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by BAKER & MCKENZIE LLP, Attorneys for Plaintiff-Appellant to print this document. I am an employee of Counsel Press.

On **December 10, 2015**, Counsel for Plaintiff-Appellant has authorized me to electronically file the foregoing **REPLY BRIEF OF PLAINTIFF-APPELLANT** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to the following counsel registered as CM/ECF users:

Kent E. Baldauf, Jr.
Daniel H. Brean
Bryan P. Clark
The Webb Law Firm
Suite 1200
One Gateway Center
420 Ft. Duquesne Boulevard
Pittsburgh, PA 15222
kbaldaufjr@webblaw.com
dbrean@webblaw.com
bclark@webblaw.com

Upon acceptance by the Court of the e-filed document, six paper copies will filed with the Court, via Federal Express, within the time provided in the Court's rules.

December 10, 2015

/s/Gary Y. Chyi
Counsel Press